## Stewart *v.* Pennsylvania State Camp of the Patriotic Order Sons of America, Appellant.

Argued October 3, 1935.

Before KELLER, P. J., BALDRIGE, STADTFELD, PARKER and JAMES, JJ.

*Orrin E. Boyle,* with him *John Robert Jones,* for appellant.

*Frank Rogers Donahue,* of *Donahue, Irwin, Merritt & Gest,* with him *George M. Kevlin,* for appellee.

OPINION BY JAMES, J., April 24, 1936:

On December 12, 1925, the plaintiff, Frank G. Stewart a contractor, and defendant, Pennsylvania State Camp of the P. O. S. of A., entered into a written agreement under the terms of which the plaintiff agreed to provide all materials and perform all the work necessary for the erection and completion of the Patriotic Order Sons of. America Building upon the premises situated at 1317-1319 North Broad Street, Philadelphia, Pa., for the consideration of $158,836. This contract was executed on behalf of the defendant by its state president, Orrin E. Boyle, and Horace V. MacFadyen, chairman of the State Camp building trustees, and attested by the defendant's state secretary Charles B. Helms. This agreement provided, inter alia: "Art. 3. No alterations shall be made in the work except upon written order of the Architect; the amount to be paid by the owner or allowed by the contractor by virtue of such alterations to be stated in said order. Should the Owner, and Contractor not agree as to amount to be paid or allowed, the work shall go on under the order required above, and in case of failure to agree, the determination of said amount shall be referred to arbitration, as provided in Art. 12 of this contract.

"Art. 9. It is hereby mutually agreed between the parties hereto that the sum to be paid by the owner to the contractor for said work and materials shall be—ONE HUNDRED FIFTY-EIGHT THOUSAND, EIGHT HUNDRED THIRTY-SIX DOLLARS ($158,-836.00), subject to additional deductions as hereinbefore provided, and that such sum shall be paid by

the owner to the contractor, in current and only upon the certificates of the architect, as follows:"

Subsequent to the execution of the contract, an examination of the soil revealed that excavations would have to be made some forty feet deeper than the plans provided for and that the foundation would require underpinning at an extra cost of $34,000, for which work plaintiff and defendant entered into a second written agreement executed on behalf of the defendant by the state president and the state secretary. The principal contract required that plaintiff plaster or stucco the party wall between 1315 and 1317 North Broad Street, although no use was to be made of this party wall as the foundation wall of the new building was six or eight feet north of the old party wall.

On February 24, 1926, the Bureau of Building Inspection, Department of Public Safety in Philadelphia notified the Association of Universal Free Masons, owner of the adjoining premises at 1315 North Broad Street, and also notified the defendant that the foundation under the party wall between 1315 and 1317 North Broad Street was in a dangerous condition and directed both parties to remove the danger. The building department instructed the plaintiff not to proceed with the excavation for the new wall until the party wall had been repaired. The plaintiff contractor then conferred with Charles B. Helms, MacFadyen and the designated architect, Herman Miller; and the latter requested plaintiff to get him a price for repairing the wall. On February 25, 1926, plaintiff sent an estimate of $1,700 to Miller for placing piers under the party wall down to the rock, provided the work was started immediately, otherwise it would be considerably more expensive. On March 17, 1926, Miller, after being authorized by MacFadyen, wrote the plaintiff as follows: "Mr. MacFadyen has instructed me to tell you that your bid of Seventeen Hundred Dollars ($1,700.00) is ac-

cepted. The P. O. S. of A. will send to you an official acceptance." It appears that before giving the acceptance, Miller had been so instructed by MacFadyen, who testified that the state secretary and other trustees had been consulted and the acceptance was given to avoid delay in the construction of the new building, as the officers and trustees were anxious to get the new building underway. No official acceptance was sent by the P. O. S. of A., but from the testimony it appears that Miller, MacFadyen, Helms and a number of the building trustees were in and about the premises while the work of underpinning the south wall was being carried on, and no one suggested to the plaintiff that the work should be discontinued until he received an official acceptance signed by the state officers. Immediately upon receipt of the letter from the architect, plaintiff commenced work upon the party wall, and on April 8, 1926, wrote to the architect enclosing a bill for the $1,700, one-half of which was later paid by defendant. MacFadyen resigned about the time the letter of acceptance was sent to plaintiff. Directly after March 17, Helms was notified by the architect the letter had been sent to plaintiff, but although he was on the ground each day, he did not notify plaintiff that the letter had been written without authority. Subsequent to the resignation of MacFadyen, some of the orders issued by the architect for extras or alterations contained solely the statement that Helms had so directed.

Defendant's testimony was to the effect that the plaintiff, his superintendent and foreman had requested the state secretary to issue a written order which was refused. When the request was finally refused, according to Helms' testimony, plaintiff stated he would proceed with the operation and if he could not collect in any other way, he would sue the Masons. The record also contains certain correspondence between the plaintiff and the Association of Universal Free Masons,

plaintiff and the state secretary, and the state secretary and the architect, all of which must be read in the light of the testimony of plaintiff and the state secretary bearing upon the question whether plaintiff looked to the defendant for all of the cost or that it was to be borne in equal shares by defendant and the Masonic Order. Suit was brought for the sum of eight hundred and fifty dollars.

This case was tried three times. The first time a nonsuit was entered which was subsequently removed by the court; the second trial resulted in a disagreement, and on the third or present trial, the jury found for the plaintiff. Defendant's motions for a new trial and judgment n. o. v. were refused and from the judgment entered on the verdict, this appeal was taken.

Under assignments of error 4, 31, 32, 33, 34 and 35, appellant presents the statement of the question involved as follows: "Can an agency be established where there is no allegation of it, even in general terms, in a statement of claim?" The third paragraph of plaintiff's statement avers that "upon the receipt of the condemnation notice the plaintiff sent an estimate of seventeen hundred dollars ($1700.00) for said work to Herman Miller, architect, named in the contract. Copy of said estimate is attached hereto and made part hereof as Exhibit B. Said estimate was accepted by the architect by letter dated March 17, 1925 (1926), a copy of which is annexed hereto and made part hereof as Exhibit C." To which paragraph defendant replied inter alia: "In further answer to the said averment the defendant denies that the said estimate was accepted by the said Herman Miller for or on behalf of the defendant, the said Herman Miller having no authority whatsoever to bind the defendant for or by reason of the subject matter of the said estimate set forth in plaintiff's Exhibit B." Undoubtedly it would have been better pleading for plaintiff to have averred specifically that the archi-

tect had authority to bind the defendant, but the failure to do so was not raised in the pleading nor do we find any objection to the testimony on this ground. The failure to raise the objection at the proper time operates as a waiver of any defects in the statement of claim and cannot be raised now: Coble v. Zook, 6 Pa. Superior Ct. 597. Had the question been properly raised, it would have afforded the plaintiff an opportunity to have amended the statement so as to aver specifically that the architect was authorized.

However, it appears that the question of agency was in fact raised in the pleadings. Plaintiff's statement averred it had made an estimate which was sent to "Herman Miller, architect, named in the contract"; that the bid was accepted by the architect; and the contract, stating the authority of the architect, was attached to the statement of claim as an exhibit. The affidavit of defense denied acceptance by the architect for or on behalf of the defendant and further denied the architect's authority to do so. The pleadings therefore squarely raised the issue of agency.

Under assignments of error one to thirty-five inclusive, appellant submits the statement of question involved as follows: "Does a builder's architect, under a general contract, which provides that no alterations are to be made except upon the order of the architect, have authority to act as the agent for and bind the builder in ordering additional work outside of the general contract when such order is made subject to an official acceptance, which is never given by the builder?" Appellant urges that the underpinning or work done under the estimate was not an "alteration" within the meaning of Article 3, which provides that "no alterations shall be made in the work except upon written order of the architect." The work authorized by the architect was an addition to the work covered by the contract, but the term "alteration" is not confined alone to a change

but may include additions as well as deductions. Under the contract defendant was bound by any changes that were ordered by the architect in the work required under the contract, and it is necessarily implied that for the performance of work upon any portion of the premises, which was necessary for the performance of work under the principal contract, the architect's written order was likewise binding, especially as the testimony establishes that the contractor was directed not to proceed with the new building until the south party wall had been underpinned. The principal contract required work to be performed upon the south party wall "not of an extensive character," but sufficient to establish that the party wall was within the contemplation of the contract and that defendant recognized it had certain obligations with reference to its repair and maintenance. Under the powers granted to the architect, we are convinced that the court did not err in charging the jury that the architect had authority under the principal contract to accept the estimate for the underpinning of the wall itself. But independent of the contract, the testimony was sufficient to establish that the parties had entered into a contract for the underpinning of the south wall. Conferences had been held between the architect, chairman of the building committee, state secretary and members of the board of trustees, and the acceptance of the estimate was made by the architect upon the express direction of the chairman of the building committee. Subsequent to the acceptance by the architect, knowledge was brought home to the state secretary of the letter of acceptance, who at no time disavowed the authority to bind the defendant, although both he and other trustees were present at various times observing the progress of the work. The failure of the defendant to send an official acceptance cannot now be taken advantage of as the conduct of the defendant's authorized agents in per-

mitting the work to be done, with knowledge of the architect's acceptance, was in every respect an affirmance by the officers of the architect's act. Under the oral testimony, whether the officers had authorized the work was entirely a question for the jury to determine. Where such authority is to be implied from the conduct of the parties, or where the agency is to be established by witnesses, the fact and scope of the agency are for the jury: American Car & Foundry Co. v. Alexandria Water Co., 218 Pa. 542, 67 A. 861; Bowman v. Press Publishing Co., 316 Pa. 531, 175 A. 483. The jury are to judge of the credibility of the witnesses and of the implication to be made from their testimony; it is error for the court to decide the point as a matter of law: Cates & Shepard v. Seltzer, 62 Pa. Superior Ct. 348, 355.

Appellant further argues that the court erred in refusing to charge the jury that, as defendant did not erect the new building upon the south party wall, under the Act of 1899, P. L. 193, sec. 24, providing for the repair of defective party walls, the cost of the repairing and the reconditioning of the party wall was to be borne by the Association of Universal Free Masons. In reference to this question, the court said: "The law does affect the rights of the adjoining owners and their liabilities to each other but it doesn't fix the rights between either one of those owners and a third party, the contractor with whom he may enter into a contract for performance of work upon a party wall. So there is not in the mind of the Court, I so instruct you, so much in the contention in relation to what the law says as to rights under party walls here as has been emphasized." With this instruction we are in accord. This section of the statute provides in what proportion the cost of repairing, removing or reconstructing party walls shall be borne by the adjoining owners, but has no application as between a contractor and one of the owners, who has entered into an agreement for the re-

pairing of the party wall. Although the adjoining land owner may thus receive a substantial benefit, it does not follow that the contractor is affected by any liability over as between the adjoining land owners. If the contracting owner is entitled to contribution from the adjoining land owner for his share of the cost and expense, as provided for by the act of assembly, it does not in any way affect the liability of the contracting owner to the contractor. Whether defendant was under a legal duty to make repairs to the party wall was immaterial if defendant did assume to make the repairs and authorize plaintiff to perform the work.

We shall not discuss in detail the assignments of error relating to the introduction in evidence of other orders issued by the architect subsequent to the acceptance; in permitting plaintiff to introduce evidence that he was required to place a stucco facing upon the south party wall, and the refusal of the court to affirm certain of its points, but have given them careful consideration and find no merit in them.

As we view the record the issues were fairly submitted to the jury, and the assignments of error are overruled and the judgment is affirmed.

Judge RHODES took no part in the consideration or decision of this case.