537 A.2d 871

**COMMONWEALTH of Pennsylvania**

v.

**William MacSHERRY, Appellant.**

Superior Court of Pennsylvania.

Argued April 28, 1987.

Filed Feb. 16, 1988.

James G. Barnes, Assistant Public Defender, Doylestown, for appellant.

James C. Dalton, Assistant District Attorney, Doylestown, for Com., appellee.

Before OLSZEWSKI, DEL SOLE and BECK, JJ.

BECK, Judge:

Appellant was found guilty at a trial de novo on November 8, 1985. He filed a "Motion in Arrest of Judgment" on November 18, 1985. Although this original post-verdict motion suggested that appellant might file additional reasons after the notes of testimony were transcribed, the record does not reveal that he sought or received permission from the trial court to do so. Nevertheless, on April 17, 1986, appellant filed a "Supplemental Motion for a New Trial and in Arrest of Judgment."

We first address whether the additional issues raised in appellant's supplemental post-verdict motions are preserved for our review. Appellant filed his supplemental post-verdict motions more than five months after the verdict. A defendant normally has ten days to file post-verdict motions. Pa.R.Crim.P. 1123(a). The trial court considered all of appellant's post-verdict motions, including all the supplemental motions. A trial court's acting on untimely filed post-verdict motions, however, does not preserve for review issues raised in those motions. *Commonwealth v. Gregory*, 309 Pa.Super. 529, 455 A.2d 1210 (1983).

We note that in a significant number of criminal cases appealed to this court, the records show that a defendant files post-verdict motions (often boilerplate) which include a statement to the effect that "defendant reserves the right to file supplemental post-verdict motions after the filing of

the trial transcript." We find no support in the law or court rules for such a "right," absent an express grant of permission from the trial court. The last sentence of Rule 1123(a) states: "If the grounds asserted do not require a transcript, neither the filing, argument, nor hearing of post-verdict motions shall be delayed for lack of a transcript of the notes of testimony." This sentence implies that the trial court may allow filing of delayed post-verdict motions if the grounds require waiting for the transcript. In 1983 this court noted the ambiguity in the Rule and invited its amendment:

> No doubt some assignments of error, especially to rulings on evidence and the charge, can be made specific only by reference to the transcript, but counsel shouldn't need the transcript to say in what respect the evidence was "insufficient" or why the verdict was "against the weight of the evidence." In any event, counsel may, after reviewing the transcript *obtain leave* to supplement boiler-plate assignments with specific ones. (It is to be hoped that the Procedural Rules Committee will re-examine Rule 1123; its ambiguities have generated quite unnecessary litigation. The procedure by which assignments may be added to a post-verdict motion might well be spelled out.)

*Commonwealth v. Holmes,* 315 Pa.Super. 256, 461 A.2d 1268, 1273–74 (1983) (en banc) (emphasis added). Although the Rule was amended in 1985 to require specificity in post-verdict motions, the Rule still fails to spell out a procedure for supplementing post-verdict motions.

▆ In a recent case, the Superior Court clarified the steps an appellant must take to preserve issues raised in supplemental post-trial motions. "[P]ermission must be requested and granted on the record before supplemental post-trial motions may be filed." *Commonwealth v. Sheaff,* 365 Pa.Super. 613, 530 A.2d 480 (1987) (emphasis omitted).[1]

---

1. It seems to this author that the better policy would be *not* to require a separate request for permission to file supplemental post-trial motions. Such a step is a needless burden on the judicial system in a situation where appellant has reserved the right to file supplemental

In the instant case, the record does not show that appellant was granted permission to file untimely post-verdict motions. Thus, appellant's "Supplemental Motion for a New Trial and in Arrest of Judgment" was not timely filed and preserves no issues for our review.

Next, we consider the effect of appellant's original "Motion in Arrest of Judgment," which was timely filed. Appellant's motion states the charge against him, and then appellant moves the Court to arrest the judgment against him and assigns the following reason therefore:

1. The verdict was against the weight of the evidence in that the Commonwealth failed to establish that the defendant's license was in fact subject to a driving under the influence related suspension on the date on which the defendant was cited for operating a motor vehicle while under driving under the influence related suspension.

■■ We find that this motion is boilerplate and preserves no issue for our review. *Holmes.* The motion is defective in several respects. First, although the motion purports to say more than simply "the verdict was against the weight of the evidence," the rest of the sentence merely recites the elements of the offense and thus fails to specify *why* the verdict was against the weight of the evidence. In *Holmes* we gave this example of such a specific motion: "that the identification testimony was so vague, and the alibi testimony so powerful, that the verdict shocks the conscience." 315 Pa.Super. at 267, 461 A.2d at 1273. Second, appellant has muddled the distinction between evidentiary weight and sufficiency by raising a weight of the evidence claim in a motion in arrest of judgment. *See Commonwealth v. Whiteman,* 336 Pa.Super. 120, 123–26, 485 A.2d 459, 461–62 (1984). The proper procedure to challenge the weight of the evidence is by a motion for a new trial. *Holmes,* 315 Pa.Super. at 260, 461 A.2d at 1270. Third, if the motion preserves *any* issue for review, it

post-trial motions, the appellant does so timely and the trial court decides the post-trial motions. However, the requirement is part of the procedural law of this Commonwealth until it is modified by court rule or decision.

would not be either of the issues in appellant's statement of questions presented in his brief to this court.

Appellant's Statement of Questions Presented is as follows:

A. Did the lower court err in applying 75 Pa.C.S. § 1541, by finding the appellant guilty of driving under suspension/driving under the influence related, when the statute clearly states that suspension commences only after the license is surrendered to the state, and at the time of the appellant's arrest, he had not yet surrendered his license?

B. Did the lower court err in finding the appellant guilty of driving under suspension/driving under the influence related in violation of 75 Pa.C.S. § 3731(e)(6), when the court agreed with the Pennsylvania Department of Transportation's policy of extending a one month suspension indefinitely until the license is ultimately surrendered to the state?

These are not challenges to the weight of the evidence. *See Commonwealth v. Nelson*, 514 Pa. 252, 523 A.2d 723 (1987); *Commonwealth v. Stambaugh*, 355 Pa.Super. 73, 512 A.2d 1216 (1986); *Commonwealth v. Datesman*, 343 Pa.Super. 176, 494 A.2d 413 (1985). Thus, we conclude that appellant has preserved no issues for our review.

Although we find waiver, we choose to consider an issue of statutory interpretation in response to the dissent which addresses the merits. Appellant claims that although he received notification to surrender his license, his license was not suspended because he never surrendered it. Appellant bases his contention on his interpretation of 75 Pa.Cons. Stat.Ann. § 1541(a):

§ 1541. Period of revocation or suspension of operating privilege

(a) Commencement of period.—The period of revocation or suspension of the operating privilege shall commence on the date on which the driver's license was surrendered to and received by the court or the department, as the case may be. The period of revocation or suspension of a nonresident licensed driver or an unlicensed driver shall

commence on the date of conviction, on a date determined by the department in accordance with its regulations. The department may, upon request of the person whose license is suspended, delay the commencement of the period of suspension for a period not exceeding six months whenever the department determines that failure to grant the extension will result in hardship to the person whose license has been suspended.

75 Pa.Cons.Stat.Ann. § 1541 (Purdon 1977) (amended 1986).

■ This section is ambiguous. It could mean, as the dissent asserts, that a driver's operating privilege is not under suspension until he returns his license to PennDOT, however long that may take. It could also mean that the driver's operating privilege is suspended on the date set by PennDOT but that the prescribed *period* of suspension does not commence running (for the purpose of crediting the driver against the term of suspension and thus moving the driver closer to restoration of the privilege) until he returns his license to PennDOT. When faced with the interpretation of an ambiguous statute, we must ascertain and effectuate the intention of the legislature. 1 Pa.Cons.Stat.Ann. § 1921(a) (Purdon Supp.1987); *Commonwealth, Dept. of Transportation v. McFarren*, 514 Pa. 411, 525 A.2d 1185 (1987).

The Statutory Construction Act sets out the factors to be considered in ascertaining legislative intent:

§ 1921. Legislative intent controls

(c) When the words of the statute are not explicit, the intention of the General Assembly may be ascertained by considering, among other matters:

(1) The occasion and necessity for the statute.

(2) The circumstances under which it was enacted.

(3) The mischief to be remedied.

(4) The object to be attained.

(5) The former law, if any, including other statutes upon the same or similar subjects.

(6) The consequences of a particular interpretation.

(7) The contemporaneous legislative history.

(8) Legislative and administrative interpretations of such statute.

*McFarren,* 514 Pa. at 415, 525 A.2d at 1187 (quoting 1 Pa.Cons.Stat.Ann. § 1921(c) (Purdon Supp.1987)).

In interpreting the legislative intent, we may presume that "the General Assembly does not intend a result that is absurd, impossible of execution or unreasonable." 1 Pa. Cons.Stat.Ann. § 1922 (Purdon Supp.1987).

We read Section 1541 of title 75 together with Section 1540. Section 1540 provides:

§ 1540. Surrender of license.

(a) Conviction of offense.—Upon a conviction for any offense which calls for mandatory revocation in accordance with section 1532 (relating to revocation or suspension of operating privilege), the court or the district attorney shall require the surrender of any driver's license then held by the defendant and shall forward the driver's license together with a record of the conviction to the department.

(b) Suspension of operating privilege.—Upon the suspension of the operating privilege of any person by the department, the department shall forthwith notify the person in writing to surrender his driver's license to the department for the term of suspension.

75 Pa.Cons.Stat.Ann. § 1540 (Purdon 1977) (amended 1985 & 1986). The purpose and remedial objective of these provisions is to provide PennDOT with a means to suspend the operating privilege it has granted to a Pennsylvania driver and thus to keep that driver off Commonwealth roadways.

The dissent's interpretation would mean that a dangerous driver could delay indefinitely the beginning of his suspension by simply refusing to return his license, and thus continue to pose a hazard to other travelers on our highways. Such an unreasonable result could not have been intended by the legislature.

We are persuaded in this regard by the reasoning of Judge Biester of the Court of Common Pleas of Bucks

County in *Commonwealth v. Trunzo*, 20 Pa.D. & C.3d 738 (1981). In *Trunzo*, the driver did not return his license and claimed he had not received notice of the suspension because he had moved without notifying PennDOT of his new address and the notice was sent to his old address. Judge Biester concluded:

If one applied literally the thesis of defendant, a contumacious driver could, by failing to apprise the Commonwealth of any change of address, completely escape for an indefinite period of time the effect of the order of suspension. In fact this case defendant did not surrender his operator's license until March of 1980 virtually a year after the effective date of the suspension. The court does not believe that this was the intention of the legislature and rather determines that section 1541(a) simply prescribes [notwithstanding the use of the word "commence"] the method of computation by which the ultimate termination of the period of suspension may be established.... We cannot believe that the legislature intended to reward a stubbornly evasive operator under these circumstances by permitting him through his own illegal and evasive conduct to avoid the impact of the suspension for an indefinite period of time....

20 Pa.D. & C.3d at 742–44 (footnote omitted).

This court has recently affirmed a conviction for the offense of driving while operator's privilege was suspended where the defendant had not returned his license to PennDOT. *Commonwealth v. Horney*, 365 Pa.Super. 152, 529 A.2d 18 (1987).

Further, the General Assembly, apparently aware of the ambiguity of sections 1540 and 1541, amended them, effective February 9, 1987. The relevant provisions are now as follows:

§ 1540. Surrender of license

(a) Conviction of offense.—Upon a conviction by a court of competent jurisdiction for any offense which calls for mandatory suspension in accordance with section 1532 (relating to revocation or suspension of operating privilege), the court or the district attorney shall require the

surrender of any driver's license then held by the defendant and shall forward the driver's license together with a record of the conviction to the department. The suspension or revocation shall be effective upon a date determined by the court or district attorney or upon the date of surrender of the license to the court or district attorney, whichever shall first occur.

(b) Suspension or revocation of operating privilege.— Upon the suspension or revocation of the operating privilege of any person by the department, the department shall forthwith notify the person in writing at the address of record to surrender his driver's license to the department for the term of suspension or revocation. *The suspension or revocation shall be effective upon a date determined by the department or the date of surrender of the license to the department if that date is subsequent to the department's notice to surrender the license, whichever occurs first.* Upon surrender of the license, the department shall issue a receipt showing the date that it received the license.

§ 1541. Period of revocation or suspension of operating privilege

(a) Commencement of period.—The period of revocation or suspension of the operating privilege shall commence as provided for in section 1540 (relating to surrender of license). *No credit toward the revocation or suspension shall be earned until the driver's license is surrendered to the department, the court or the district attorney, as the case may be.* A nonresident licensed driver or an unlicensed driver shall submit an acknowledgment of suspension or revocation to the department in lieu of a driver's license. The department may, upon request of the person whose license is suspended, delay the commencement of the period of suspension for a period not exceeding six months whenever the department determines that failure to grant the extension will result in hardship to the person whose license has been suspended.

75 Pa.Cons.Stat.Ann. §§ 1540(a), (b), 1541(a) (Purdon Supp. 1987) (emphasis added). These provisions now make clear

that the legislature intends to encourage suspended drivers to return their licenses to PennDOT before the beginning of the term of suspension by providing that return of the license begins the running of the term. This is new language, but not a new policy. Former Section 1541(a), although ambiguous, has the same meaning. Thus, since appellant never returned his license, the period of the suspension of his operating privilege commenced on the effective date set in PennDOT's letter of October 9, 1984, that is, on November 12, 1984.

Based on our finding of waiver, we do not address other substantive issues which appellant raises.

Judgment of sentence affirmed.

DEL SOLE, J., files dissenting opinion.

DEL SOLE, Judge, dissenting:

I dissent. Unlike the majority, I would find that the Appellant has preserved his claims for appellate review and therefore would reach the merits of his contentions.

Appellant was found guilty at trial on November 8, 1985. He filed a "Motion in Arrest of Judgment" on November 18, 1985. The motion assigned the following reason for seeking arrest of judgment:

The verdict was against the weight of the evidence in that the Commonwealth failed to establish that the defendant's license was in fact subject to a driving under the influence related suspension on the date on which the defendant was cited for operating a motor vehicle while driving under the influence related suspension.

It is the majority's opinion that the above motion is boilerplate and preserves no issue for review and furthermore that the Appellant has confused the distinction between evidentiary weight and sufficiency by raising a weight of the evidence claim in a motion in arrest of judgment. I disagree. I have examined the Appellant's post-trial motions and find that a substantive reading of his claim leads to the inescapable conclusion that his challenge satisfies the requirements set forth in *Commonwealth v. Holmes*, 315

Pa.Super. 256, 461 A.2d 1268 (1983). Additionally, the defendant raised this issue during the trial. (N.T. 9–11). Clearly, the trial court was made aware of the defendant's contention as required. The defendant's motion claims that the Commonwealth failed to prove his license was suspended on the day he was charged with driving under suspension. That is not boilerplate and specifically raises the issues before us.

Therefore, I find it necessary to discuss the merits of the Appellant's claim. This is an appeal from a judgment of sentence following a conviction for driving with a suspended license. I would reverse.

The Appellant was charged with driving under the influence and placed in ARD on September 20, 1984. One of the conditions of his ARD placement was a thirty day suspension of his motor vehicle driver's license.

The Pennsylvania Department of Transportation sent Mr. MacSherry the following notice on October 9, 1984:

As a result of the order from the Court of Bucks County, your driving privileges are being suspended for a period of 1 month as mandated by section 3731(E)(6)(II).

In order to comply with this suspension/revocation, you are required to return any current driver's license, learner's permit and/or temporary driver's license (camera card) in your possession no later than the effective date listed below. Failure to comply with this notice shall result in this bureau referring this matter to the Pennsylvania State Police for prosecution under section 1571(A)(4) of the vehicle code.

You will not be permitted to operate a motor vehicle until you meet all requirements as stated above. Please allow five to seven days for license to be returned to you.

Effective date 11/12/1984 12:01 a.m. Credit will not begin until license is received by bureau.

This notice was received at the home of the Appellant's mother from which the Appellant had recently moved. Appellant testified at trial that his mother told him about the notice in a telephone conversation, but that he never actual-

ly saw the notice. Appellant never surrendered his driver's license as required.

On March 6, 1985, the Appellant was stopped by a police officer while he was driving a car with an expired inspection sticker. The officer discovered that Mr. MacSherry had received the notice of October 9, 1984 but had not surrendered his license. The Appellant was then cited for driving under suspension and subsequently convicted of this offense by the Court of Common Pleas of Bucks County.

On appeal Mr. MacSherry argues that he was not driving under suspension on March 6, 1985. He claims his license had never been suspended because he never surrendered it. He bases this argument on the language of 75 Pa.C.S.A. § 1541(a) which provides:

§ 1541. Period of revocation or suspension of operating privilege.

(a) Commencement of period. *The period of revocation or suspension of the operating privilege shall commence on the date on which the driver's license was surrendered to and received by the court or the department,* as the case may be. The period of revocation or suspension of a nonresident licensed driver or an unlicensed driver shall commence on the date of conviction, or in the case of a revocation or suspension without a conviction, on a date determined by the department in accordance with its regulations. The department may, upon request of the person whose license is suspended, delay the commencement of the period of suspension for a period not exceeding six months whenever the department determines that failure to grant the extension will result in hardship to the person whose license is suspended. (Emphasis added).

75 Pa.C.S.A. § 1541(a).

The Appellant argues that by statute a driver license suspension does not begin until the license is surrendered. Clearly, this is the plain meaning of the words contained in 75 Pa.C.S.A. § 1541(a).

The Commonwealth claims that MacSherry's position that his conviction cannot stand because he failed to return his

license is implausible. The Commonwealth argues that if we accept the Appellant's argument the department would be at the whim of the offender in that the suspension would start, if ever, at the Appellant's convenience.

I do not find that the Commonwealth's argument is persuasive. The motor vehicle code provides the department with other means to enforce an order to surrender a license.

The notice which was sent to Mr. MacSherry on October 9, 1984 by the department warned him that his failure to surrender his license could lead to prosecution under 75 Pa.C.S.A. § 1571(a)(4). This section provides that it is unlawful for any person to fail or refuse to surrender a driver's license to the department upon lawful demand. Mr. MacSherry has not been prosecuted under this section.

The department may also order the police to seize a license. The record in this case shows that a police pick up of Mr. MacSherry's license was ordered by the department on December 11, 1984. The record does not reveal why this pick up was not completed. Further, the license can be withheld at the time of renewal for the appropriate period.

I find that the Appellant's argument is a sound one. The plain meaning of § 1541 of the motor vehicle code is that the suspension commences when the license is surrendered. In this case the Appellant did not surrender his license and so his suspension had not begun when he was cited for driving under suspension. I would therefore reverse the judgment of sentence. The department had means at its disposal to enforce the surrender of the Appellant's license in order to commence his period of suspension. A conviction for driving under suspension was not an appropriate means.

Also, it must be pointed out that in no event could an operator extend the period of noncompliance with the order to return his license beyond the time for renewal of the license. Certainly when the operator's license is to be renewed, the Commonwealth could have under the then existing statute, refuse renewal for the suspension.

The majority cites the revised language in §§ 1540 & 1541 and cavalierly states: "the General Assembly apparently aware of the ambiguity of §§ 1540 & 1541, amended them,". Certainly, the language found in § 1541 holding that the period of revocation or suspension commences on the date which the license was surrendered to the court or the department is not ambiguous. More specifically, the amendments to the statutes indicated in the majority, all of which occurred after the charges were filed in this case and after the violation alleged occurred, clearly indicate the General Assembly's intent to correct an anomaly in the law by providing that upon conviction of an offense with a mandatory suspension that the court shall confiscate the license immediately at the time of the conviction or, in cases where the department notifies of a suspension that the suspension begins on the date set by the department but does not end until the appropriate time expires following receipt of the license. That is the way the law presently reads, it is not the way the law was at the time of the defendant's arrest.

How the majority finds an ambiguity in clear language of the statute and attempts to bolster its ambiguity argument by citing sections of amended statutes which clearly change the law is beyond me. For these reasons I must dissent.