587 A.2d 10

**Christine Plant MILLARD and Kevin Millard, Appellants,**

**v.**

**Warren C. NAGLE, M.D., and Guthrie Clinic, Ltd., Appellees.**

Superior Court of Pennsylvania.

Argued April 25, 1990.

Filed Feb. 27, 1991.

Petition for allowance of Appeal Granted July 17, 1991.

Laurence M. Kelly, Montrose, for appellants.

Joseph P. Mellody Jr., Wilkes–Barre, for appellees.

Rachel Munafo, Philadelphia, amicus curiae.

Before CIRILLO, President Judge, and CAVANAUGH, ROWLEY, WIEAND, OLSZEWSKI, DEL SOLE, TAMILIA, JOHNSON and HUDOCK, JJ.

DEL SOLE, Judge:[1]

This action was instituted by Appellants seeking to recover damages suffered as a result of an unauthorized surgical proceeding performed on Appellant, Christine Millard. Prior to addressing the merits of the claims raised by Appellants it is necessary to address whether this court must consider issues contained in untimely post-trial motions which the trial court elected to address.

[1]. This case was assigned to this writer on December 17, 1990.

## POST–TRIAL MOTIONS

Prompted by the supreme court's recent decisions on the subject, *See, Kurtas v. Kurtas*, 521 Pa. 105, 555 A.2d 804 (1989) and *Commonwealth v. Sheaff*, 518 Pa. 655, 544 A.2d 1342 (1988), this court has been called upon to review the question of the trial court's authority to rule on untimely filed post-trial motions.

The supreme court in its opinion in *Kurtas* and its ruling in *Sheaff* has instructed us to consider issues raised in untimely filed post-trial motions where the trial court has elected to consider and rule on the merits of these claims. The supreme court's action in these cases must cause us to liberally read Pa.R.C.P. 227.1(b)(2) which makes reference to the trial court's grant of "leave" to specify additional grounds for relief. The rule provides:

> (b) Post-trial relief may not be granted unless the grounds therefor,
>
> .　　.　　.　　.　　.
>
> (2) are specified in the motion. The motion shall state how the grounds were asserted in pre-trial proceedings or at trial. Grounds not specified are deemed waived unless leave is granted upon cause shown to specify additional grounds.
>
> (c) Post-trial motions shall be filed within ten days after
>
> (1) verdict ...

Although this rule has been interpreted to require a party seeking to file untimely original or post-trial motions to obtain leave from the trial court to do so, the supreme court has instead held that the trial court has the authority under Pa.R.C.P. 126 to disregard procedural errors. Rule 126 provides:

> The rules shall be liberally construed to secure the just, speedy and inexpensive determination of every action or proceeding to which they are applicable. The court at every stage of any such action or proceeding may dis-

regard any error or defect or procedure which does not affect the substantial rights of the parties.

In accordance with the supreme court's decisions on the subject and the provisions of Rule 126, it is appropriate to conclude that whenever original and/or supplemental post-trial motions are filed at a time where the trial court has jurisdiction over the matter but outside the ten day requirement of 227.1, the trial court's decision to consider these motions should not be subject to review by this court unless the opposing party has set forth an objection setting forth specific facts to demonstrate prejudice. If no objection is raised by the opposing party and the trial court rules on the merits of the issues contained in untimely filed motions, the trial court's action will be considered an implicit grant of leave to the filing of the motions. This decision should not be subject to review by this court, and we should go on to consider the issues contained in these motions on their merits, as did the trial court. Such was the case in *Kurtas, supra.* There both the original and supplemental post-trial motions were untimely filed, however, no objection to timeliness was raised. The Supreme Court held that this court erred by finding matters raised in these motions waived even though the trial court decided these issues on their merits.

Where an objection to the timeliness of the post-trial motions is lodged by the opposing party, the trial court should be required to set forth its rationale for its decision to consider the issues raised in the motions on their merits, if the objection sets forth facts that demonstrate prejudice. The trial court's decision in such an instance can be reviewed by this court to determine whether an abuse of discretion has occurred. Our review will be aided by the trial court's explanation for its decision to disregard the late filing in the face of an allegation of prejudice which is supported by specific facts.

In this case, the original post-trial motions were timely filed. Approximately four months after the verdict

these motions were supplemented by Appellant. An objection was filed by the Appellees with the trial court. The objection called the trial court's attention to the untimely filed supplemental post-trial motions. Although the objection does state that Appellants "have not shown any cause for such delay to the prejudice of the Defendants," the objection does not allege in what manner the Appellees were prejudiced. The trial court considered and decided the issues on their merits. In so doing, it effectively rejected the Appellees' claim of prejudice. The trial court's action was proper for two reasons. First, there were no specific allegations of prejudice claimed by the Appellees. Second, the trial court had before it timely filed post-trial motions which had not yet been argued or decided. In this posture, the Appellees were still within the trial court's jurisdiction and subject to a ruling on the original motions which could have granted a new trial. The Appellees' position in the litigation had not changed. Absent specific allegations of prejudice, this court should look to the action of the trial court in deciding the issues on their merits and do likewise.

## ISSUE OF CONSENT

In concluding that the issues presented by Appellants are not waived, it becomes necessary to examine the issues at the heart of this appeal. Although Appellants' set forth a number of issues, our decision with regard to their claim that the jury was improperly charged mandates a new trial and makes unnecessary a discussion of the remaining claims of error.

█ The underlying action was instituted by Christine Millard and her husband who alleged that the defendant, Dr. Nagle, removed Ms. Millard's last remaining ovary without her knowledge or consent resulting in her undergoing an immediate state of menopause at the age of 37. Ms. Millard initially sought the aid of Dr. Nagle to have repaired two fistulae which developed in her bladder as a result of an earlier surgery. During the course of bladder repair surgery, Dr. Nagle encountered Ms. Millard's last

remaining ovary in an enlarged condition and in a location which blocked access to the bladder which he was to repair. Dr. Nagle removed the ovary and proceeded to complete repair of the bladder.

Appellants complain that the jury verdict in favor of Appellees was tainted by improper jury instructions. The following portion of the court's charge is at issue:

> [Y]ou ought to also know that as to the information that is to be divulged to the plaintiff, in this situation, it is not what she would have thought herself, given the information that perhaps should have been given, if you so find, but what a reasonable person in her situation would have felt. Let me put it another way. Let me say something else really. If you find that a reasonable person in the position of the plaintiff under all of the circumstances as you find them to be would have said to go ahead anyway, she cannot recover.

In *Sagala v. Tavares*, 367 Pa.Super. 573, 533 A.2d 165 (1987), *Alloc. denied* 518 Pa. 626, 541 A.2d 1138 (1988) the jury was presented with a similar instruction. The court charged the jury that the plaintiff had the burden of proving the following:

> That if a reasonable person in [plaintiff's] condition had known the risks and possible adverse consequences of the recommended surgery, that a reasonable person would not have undergone the surgery.

*Id.*, 367 Pa.Superior Ct. at 579, 533 A.2d at 168.

After considering the above portion of the charge, this court ruled that it was improper and prejudicial to the plaintiff's case and required that a new trial be awarded. The court found that it was irrelevant to consider whether a reasonable person in the plaintiff's position would have consented to the surgery. "The primary focus of Pennsylvania law with respect to informed consent is to guarantee that a patient is supplied with all the material facts from which an intelligent choice as to medical attention may be reached, *regardless of whether the patient chooses rationally.*" *Id.*

The position taken by the court in *Sagala* was followed in *Gouse v. Cassel*, 385 Pa.Super. 521, 561 A.2d 797 (1989). *Alloc. granted* 524 Pa. 608, 569 A.2d 1367 (1989). In *Gouse* the jury was presented with an interrogatory which asked it to determine if a reasonable person in the plaintiff's condition "would have agreed to undergo the operation nevertheless." The court ruled that the interrogatory, as written, incorrectly represented the law of Pennsylvania. Because the outcome of the trial may have been different if the improper interrogatory was not provided to the jury, a new trial was ordered. The court based its ruling on the long held principal in this Commonwealth "that a competent adult citizen should have the right to medical self-determination." *Id.*, 385 Pa.Superior Ct. at 524, 561 A.2d at 799. Further Judge Rowley wrote for the court:

> We reaffirm our opinion in *Sagala*, in which we held that it is improper for a trial court to add to the law in Pennsylvania by saying that before a jury can render a verdict for a plaintiff-patient, that plaintiff must show that a reasonable person in his place, having been properly advised by his doctor, would not have consented to surgery. *Id.*, 367 Pa. Superior Ct. at 580, 533 A.2d at 169. We refuse to eviscerate the doctrine of informed consent by predicating materiality and, thus, the mandate for disclosure of risks and alternatives, upon a factfinder's determination that a plaintiff-patient would have declined treatment had the disclosures been made.

*Id.*, 385 Pa.Superior Ct. at 526, 561 A.2d at 800.

The fact that the decisions in *Sagala* and *Gouse* were not available at the time of trial is of no import. It cannot be disputed that the trial court did not have the benefit of these decisions; however, Appellants preserved an objection to the charge as given and have a right to benefit from this court's clarification of the law in this area. It should be noted that the appellants in both *Sagala* and *Gouse* also objected to a court's charge which was given prior to the Superior court's pronouncements on this issue. The Superior Court in these cases nevertheless ruled that the improper

instruction was potentially prejudicial to the Appellants' case and required the entry of an order awarding a new trial. The same result should apply here.

It has been suggested that the erroneous instruction was not reversible error because the Appellants' case lacked the required expert testimony. We disagree with this conclusion. The claim made by each individual plaintiff will dictate to what extent expert testimony is necessary to establish each of three factors: the risks of the particular surgery, the existence of alternative methods of treatment, and the risks attendant with such alternatives. *See: Jozsa v. Hottenstein,* 364 Pa.Super. 469, 528 A.2d 606 (1987). *Alloc. denied* 518 Pa. 619, 541 A.2d 746.

In this case, Appellants failed to present any expert testimony and instead relied on the expert testimony provided by the defendant, Dr. Nagle. Dr. Nagle did not indicate that the necessity of removing the ovary was a medically recognized risk of the surgery and rather opined that the probability of it occurring was almost non-existent. The failure to offer proof that the risk encountered was an established risk with this type of surgery would ordinarily dismiss most informed consent cases. This is because the physician has no duty to inform a patient of a risk which is unknown and unforeseen. The patient in such a situation would have been provided with all the information relative to his or her decision to undergo the recommended procedure. Faced with this knowledge such a patient's consent would be said to be informed. Such were not the facts here. Although Ms. Millard may be said to have provided informed consent to the surgery for repair to her bladder, because she was informed of the all the known risks associated with such surgery, there was no testimony to dispute her claim that she did not give her consent to the removal of her ovary—a totally separate surgical procedure with different risks and resulting effects.

■ "The primary interest of Pennsylvania jurisprudence in regard to informed consent is that of having the patient informed of all the material facts from which he [or she]

can make an intelligent choice as to the course of treatment, regardless of whether [the individual] in fact chooses rationally." *Cooper v. Roberts,* 220 Pa.Super. 260, 286 A.2d 647 (1971). Each individual has the right to make major decisions regarding his or her own body. Where, as here, consent is given for a particular surgical procedure and an unanticipated condition is found during surgery, absent an emergency situation, the physician must have the express or implied consent of the patient to extend the surgery.

In the landmark case of *Gray v. Grunnagle,* 423 Pa. 144, 223 A.2d 663 (1966) our Supreme Court encountered a situation involving an extended surgical procedure. In *Gray* there was no dispute that the plaintiff consented to surgery. The plaintiff understood that he was consenting to an exploratory operation. In his view "if the cause of his discomfort could be ascertained, ... he would then be sewn up and, in due course, advised of the nature of his malady and could then determine if he wished to undergo corrective surgery." *Id.,* 423 Pa. at 154, 223 A.2d at 668. The surgeon, relying on the plaintiff's signed consent to the operation, extended the surgery in an effort to correct the problem which was discovered. In considering the plaintiff's lack of consent case, the court examined the history of the law in this area and comments by courts of different jurisdictions. After reviewing the testimony of the physician and the patient, the court affirmed the trial court's conclusion that the issue of whether the plaintiff had consented was a question for the jury.

In *Pizzalotto v. Wilson,* 437 So.2d 859 (La.1983) the plaintiff consented to undergo a laparotomy, an exploratory operation designed to determine the source of lower abdominal pain experienced by the plaintiff. During the course of the surgery the doctor found extensive endometrial adhesions and reproductive organs so severely damaged that, in his opinion, rendered the patient sterile. Because he felt that the failure to remove the reproductive organs would result in pain and infection necessitating more surgery prior to the patient's discharge from the hospital, the surgeon

proceeded to remove all of the patient's reproductive organs. The court noted that while the surgeon informed her of the risks involved and obtained her consent to the initial procedure, this did not relieve him of his duty to inform the patient of the risks involved in a hysterectomy and to obtain her consent to this different procedure. Relying on statutory authority which dictates that a surgeon commits a battery when a particular surgical procedure is undertaken without consent except in an emergency, the court examined whether implied consent or an emergency situation was present. Noting that consent must not impair a physician's ability to handle an emergency that immediately and seriously threatens a patient's health or life, the court found that such was not the case at hand since the patient's life or health was not threatened by the failure to immediately remove her reproductive organs.

In *Shenefield v. Greenwich Hospital Association*, 10 Conn.App. 239, 522 A.2d 829 (1987) the plaintiff, a 67 year old man, consented to surgery to correct urethral bleeding caused by a tumor. The plaintiff later discovered that in addition to the proposed prostatectomy, the doctor had performed a bilateral vasectomy. The court ruled that the doctor's failure to obtain the patient's consent to the vasectomy supported a finding of negligence. Likewise in *Lipscomb v. Memorial Hospital*, 733 F.2d 332 (1984), it was found that a surgeon's discovery of a larger-than-expected sliding hiatal hernia in surgery for removal of the patient's gall bladder did not represent an emergency situation such that the surgeon would be justified in correcting the condition without consent. The court ruled that the physician's claim of an emergency was a factual issue for the jury and since the jury was charged regarding an emergency and found in favor of plaintiff the court would not disturb its findings. *See also:* 56 ALR2d 695 (collecting cases.)

■ It would be quite unreasonable to stay the surgeon's ability to aid a patient in an emergency situation because actual or implied consent to a procedure has not been obtained. However absent the exigency, the individual

patient has a right to determine what will happen to his or her own body, even if that decision may appear irrational to another. Thus, it is imperative to rule that a physician does not have the authority to extend surgical procedures to areas outside the initial consent unless additional consent was expressly obtained, or was implied, or unless an emergency situation existed requiring immediate action to preserve the life or health of the patient. It must be emphasized that where an unanticipated condition occurs or an emergency situation arises requiring immediate action to preserve the patient's life or health and it is impractical to obtain consent, the surgeon is justified in extending the operation to overcome such condition, even absent the consent of the patient.

■ In the present case the surgeon was operating to repair fistula in the patient's bladder wall. To perform the corrective surgery the physician found it necessary to remove Ms. Millard's last functioning ovary which was unexpectedly found in an enlarged condition and in a position blocking the physician's access to the bladder. Ms. Millard asserted that she did not consent to the removal of this organ and that its removal caused her to suffer injuries for which she should be compensated. Under these circumstances the jury should be asked to determine whether consent, actual or implied, was given to Dr. Nagle to remove Ms. Millard ovary, or whether Dr. Nagle's unanticipated discovery of the misplaced organ created an emergency in which immediate action was necessary to preserve his patient's life or health. Absent such a finding, Ms. Millard should be entitled to recover for any damages suffered as a result of the unauthorized removal of her ovary.

Accordingly, we reverse the judgment in this case and remand the matter for a new trial. Jurisdiction relinquished.

OLSZEWSKI, J., files a concurring statement.

JOHNSON, J., files a concurring and dissenting opinion in which ROWLEY, J., joins.

CAVANAUGH, J., files a concurring and dissenting opinion.

WIEAND, J., files a concurring and dissenting statement.

TAMILIA, J., files a dissenting opinion.

OLSZEWSKI, Judge, concurring:

I completely agree with the majority opinion written by Judge Del Sole. With respect to the consideration this Court must give to issues raised in untimely filed post-trial motions, I believe Judge Del Sole's analysis is correct, in light of the recent decisions by our Supreme Court on the subject.

I write separately to add to the informed consent issue. I must reiterate the majority's holding that it is imperative that a physician not have the authority to extend surgical procedures to areas outside the scope of the initial procedure in the absence of informed consent, express or implied, or a medical emergency. Any other holding may be interpreted by the medical community as a license for extending the scope of surgical procedures, including the removal of internal organs as in the present case. A patient's fundamental right to make decisions affecting his or her body cannot be compromised with considerations of mere medical economy or convenience.

Accordingly, I agree that this case should be reversed and remanded for a new trial for the reasons more fully set forth by Judge DEL SOLE.

JOHNSON, Judge, concurring and dissenting:

I join so much of the majority Opinion by Judge Del Sole as discusses the issue regarding the preservation of issues raised in supplemental post trial motions and the issue of lack of informed consent. My reason for not joining out-

right is because I do not believe Judge Del Sole's analysis goes far enough.

The fundamental issue is whether Millard gave informed consent for removal of her ovary. In my mind, Millard is entitled to judgment n.o.v., *not* on the basis of reversible error in jury instructions, but rather because there is *no* conflicting evidence on whether she was informed about her ovary removal, and no evidence that the unexpected appearance of the swollen ovary presented an emergency that could be dealt with only with removal. The majority concludes, and I agree, that although Millard may have given her informed consent to surgery for repair of her bladder because the record shows that she was informed of all the known risks associated with such surgery, there was no testimony to dispute her claim that she did not give consent to the removal of her ovary, a totally separate procedure with different risks and resulting effects. Majority Opinion, at page 385.

However, the majority does not take this finding to its logical and, I believe, warranted conclusion, which is that therefore the trial court should have granted Millard's motion for judgment n.o.v. Under the undisputed facts in this case, no two reasonable persons could fail to agree that the verdict for the doctor is improper. *Moure v. Raeuchele*, 387 Pa.Super. 127, 132, 563 A.2d 1217, 1219 (1989), *allowance of appeal granted* 524 Pa. 629, 574 A.2d 70 (1990). Where there is no evidence of emergency, no evidence of discussion of ovary removal, and where the remaining ovary has been removed, I believe Millard is entitled to judgment as a matter of law.

The majority, without citation to any authority, determines that its decision with regard to the claim of improper jury charge "mandates a new trial and makes unnecessary a discussion of the remaining claims of error." Maj. opinion, page 12. I must respectfully disagree.

From the record, its clear that the motion for judgment n.o.v. was properly filed and before the trial court. In its Opinion and Order dated April 15, 1988 the trial court

considered and rejected the motion. Millard has included, as the first issue in her Statement of Questions Involved on appeal:

> Where patient was denied opportunity to decide whether her last remaining ovary should be removed as part of an unrelated operative procedure, was there such lack of informed consent as to require a Judgment N.O.V. in her favor?

> *Suggested answer: yes*

Brief for Appellants, filed July 13, 1988, page 2. The issue was ably presented at oral argument on April 25, 1990.

Where the appellant has complied with all the requirements for preserving an issue on appeal, I cannot join with my colleagues in the majority who are willing to grant partial relief without any explanation for denying additional relief to which the appellant is, arguably, entitled. See Pa.R.A.P. 302(a), 2116(a).

The majority states that:

> ... [T]he jury should be asked to determine whether consent, actual or implied, was given to Dr. Nagle to remove Ms. Millard['s] ovary, or whether Dr. Nagle's unanticipated discovery of the misplaced organ created an emergency in which immediate action was necessary to preserve his patient's life or health. Absent such a finding, Ms. Millard should be entitled to recover for any damages suffered as a result of the unauthorized removal of her ovary.

Majority opinion, page 388.

The undisputed deposition testimony of Dr. Nagle which was introduced at trial establishes that there was no consent, either actual or implied, to remove an ovary. Moreover, there is absolutely nothing in the record to suggest an emergency of any sort. Dr. Nagle testified that during the operative procedure, Millard was in no danger of any sort other than being under the effects of anesthesia, a normal occurrence. Deposition of Warren Charles Nagle, M.D.,

November 16, 1982, Notes of Testimony, April 28, 1986, pages 42–43, R.R. 44a–45a.

When we accept as true all facts and proper inferences which tend to support the contentions of Dr. Nagle and the Guthrie Clinic, and when we reject all testimony and inferences to the contrary, we still must conclude that, as a matter of law, the defendants have failed to erect a viable defense. On this, I believe that two reasonable minds could not differ. *Thomas v. Allegheny & Eastern Coal Co.* 309 Pa.Super. 333, 455 A.2d 637 (1982). The majority has not suggested to the contrary.

I would grant judgment notwithstanding the verdict on behalf of the plaintiff Christine Millard, and only remand this case for trial as to the amount of damages. The issue of liability has been fairly determined, after a second trial, and the issue of damages is readily separable from the issue of liability. *Nakles v. Union Real Estate Co.*, 415 Pa. 407, 204 A.2d 50 (1964); *Gudat v. Heuberger*, 275 Pa.Super. 535, 419 A.2d 30 (1980).

I therefore must concur and dissent.

ROWLEY, J., joins.

CAVANAUGH, Judge, concurring and dissenting:

I agree with the majority's determination, based upon *Kurtas v. Kurtas*, 521 Pa. 105, 555 A.2d 804 (1989), that the issues considered and disposed of by the court below were not waived, and are subject to review by this court.

I respectfully dissent from the majority's award of a new trial. The majority concentrates on perceived error in the charge to the jury, but in my opinion, overlooks the failure of the appellants to prove their case by the required expert testimony.[1] *Cooper v. Roberts*, 220 Pa.Super. 260, 286 A.2d

1. The court's instruction concerning informed consent included the following:

"... so it will be incumbent upon the plaintiff to prove that there was an offensive touching without the consent of the plaintiff. The offensive touching is the taking of the ovary and without consent, in this type of situation means without the knowing or informed

consent. You can't be deemed to give your consent on a complex issue such as a medical issue unless you have been informed by a doctor or somebody who knows about medicine. The law is that every human being and thus every medical patient of adult years and sound mind has a right to determine what shall be done with his or her own body or any part thereof. The question is whether or not there was an offensive touching and whether it was without the informed consent of the plaintiff. If you find that the Plaintiff has carried her burden of proving to you that those two things occurred and further that she was injured as a result of that battery, she will prevail and she will obtain a verdict from you.

> If you find that a reasonable person in the position of the plaintiff under all of the circumstances as you find them to be would have said go ahead anyway, she cannot recover. You have heard some testimony that at a prior time when she had her hysterectomy the doctor did talk it over with her before and she did say well go ahead and do everything you want, you need to do, but that was a different time and under a different circumstance, but you may consider it. But you have got to put that reasonable person in the place of the plaintiff at the time of this particular operation, given the facts, some of the facts are that she had already had one ovary gone and that she just had an operation three months before and the doctor took everything that that doctor felt was needed to be taken at that time. This is one of the circumstances which you have to consider. So question No. 1, did the doctor have the duty to inform the plaintiff before his surgical intervention, before he cut anything, to disclose to her that this might involve an organ which has been misplaced and I may have to take it if it is in the way. Do you want me to do that? That as I have indicated, every human being and that is every medical patient of adult years and a sound mind, has a right to determine what shall be done with his own body.

> It is a prerogative of the patient, not the physician, to determine for herself the direction in which her interests seem to lie to enable a patient to make a determination or to chart her course understandably, some familiarity with therapeutic alternatives and their hazards become essential. A physician's duty to inform the patient is not dependant upon the patient's request for disclosure."

In *Gouse v. Cassel,* 385 Pa.Super. 521, 561 A.2d 797 (1989), appeal granted by *Gouse v. Cassel,* 524 Pa. 608, 569 A.2d 1367 (1989), we determined that it was error for the trial court to submit an interrogatory to the jury which stated that even if the plaintiff was not advised of material risks and alternatives, would it find that a reasonable person in the plaintiff's condition would, nevertheless, have agreed to the operation. Relying on *Sagala v. Tavares, supra,* the court held that recovery is based on the surgical procedure being performed without an informed consent and not on whether the patient would have gone ahead with the operation even if he or she had been warned of the particular risk. In the instant case, the trial court did not have the decision in *Gouse, supra,* to guide it at the time the

647 (1971) held that in order to establish lack of an informed consent, the patient must prove that the physician did not disclose all of the facts, risks and alternatives that a reasonable person in the situation which the doctor knew or should have known to be the patient's, would deem significant in making the decision to undergo the recommended procedure. We held that the physician is not required to discuss every risk in order to avoid being liable for battery. "The physician is bound to disclose only those risks which a reasonable man would consider material to his decision whether or not to undergo treatment." 220 Pa.Super. at 267–8, 286 A.2d at 650–651. In *Festa v. Greenberg*, 354 Pa.Super. 346, 511 A.2d 1371 (1986), appeal denied by *Festa v. Greenberg*, 515 Pa. 580, 527 A.2d 541 (1987), we held that the question of whether a physician disclosed risks which a reasonable person would deem material is for the trier of fact. The court further stated that:

> Although expert medical testimony is not mandatory to set forth the scope of a physician's duty to disclose material risks to a patient under the reasonable man standard, we conclude that such *testimony is required to establish the existence of risks* in a specific medical procedure, *the existence of alternative methods of treatment* and the *existence of risks attendant with such alternatives.*

> (Emphasis in original).

354 Pa.Super. at 356, 511 A.2d at 1376. In the instant case, the appellant presented no expert testimony on her behalf concerning the existence of risks, alternative medical procedures, or risks attendant to the alternatives. The appellant argues that she was not required to introduce independent, expert testimony to establish the existence of a risk or alternative methods of treatment and that she could rely on Dr. Nagle's testimony. Dr. Nagle unequivocally stated that the necessity of removing an ovary was not a medically

charge was given, and the law set forth in the charge was correct at the time given. In any event, the appellant did not present the required expert testimony to establish a case based on informed consent.

recognized risk of the surgery, and the probability of it occurring was almost non-existent.

The necessity of expert testimony in informed consent cases was restated in *Maliszewski v. Rendon,* 374 Pa.Super. 109, 542 A.2d 170 (1988), appeal denied 520 Pa. 617, 554 A.2d 510 (1989). In that case, we affirmed the order of the court below, denying a new trial after entry of summary judgment. The plaintiff's informed consent case was properly dismissed for failure to provide expert testimony that the plaintiff had suffered additional injuries as a result of the surgery. We held that *Festa v. Greenberg, supra,* pointed out that *Cooper v. Roberts, supra,* merely exempted a plaintiff from presenting expert testimony to establish the materiality of a risk and that *Cooper* does not exempt a plaintiff from providing expert testimony as to all aspects of a case where it would be otherwise necessary. The court stated at 374 Pa.Super. 113, 542 A.2d 172–3: "We explained in *Festa* that, although *expert testimony* was not required to establish the materiality of risks, it *was required to establish the existence of risk, the existence of alternative treatments, and the feasibility of these alternatives in the patient's case."* (Emphasis added.)

In *Neal v. Lu,* 365 Pa.Super. 464, 530 A.2d 103 (1987) we alluded to *Festa v. Greenberg, supra,* as indicative that Pennsylvania is one of a growing number of jurisdictions adopting a "prudent patient" standard of informed consent which tests the adequacy of the physician's disclosures by requiring the fact finder to determine whether the patient received all of the information that a reasonable person would have deemed material. "We concluded in *Festa* that even though the ultimate assessment of 'materiality' is for the fact finder to make, *expert testimony is nevertheless necessary on the important secondary issues that lie outside the knowledge of the layperson."* (Emphasis added.) 365 Pa.Super. at 480, 530 A.2d at 112. We further stated in *Neal v. Lu,* 365 Pa.Super. at 480–481, 530 A.2d at 112:

Thus, only an expert is able to explain the harms that can arise from the procedure in question and estimate the likelihood that those harms will occur. *Only an expert, moreover, can identify viable alternative treatments and discuss the risks involved. See, Festa, supra,* 354 Pa.Super. at 356–60, 511 A.2d at 1376–78. *Without an informed discussion of the risks and alternatives, the fact finder cannot determine rationally whether a reasonable person would have deemed the undisclosed knowledge "material".*

(Emphasis added.)

The appellant's case, which was based on lack of an informed consent to the removal of her remaining ovary, must fail, in my opinion, because she did not establish by expert testimony the existence of the risk in the surgical proceeding undertaken by Dr. Nagle, the existence of alternative methods of treatment, and the risks attendant with such alternatives. This is the evidentiary threshold that must be met, and appellant has failed to carry that burden.

The majority adroitly sidesteps the requirement of expert testimony and cites *Jozsa v. Hottenstein,* 364 Pa.Super. 469, 528 A.2d 606 (1987), Opinion by Del Sole, J., Dissenting Opinion by Popovich, J., in support of its proposition that: "The claim made by each individual plaintiff will dictate to what extent expert testimony is necessary to establish each of three factors: the risks of the particular surgery, the existence of alternative methods of treatment, and the risks attendant with such alternatives." In my opinion, *Jozsa* should not be read to conflict with *Festa v. Greenberg, supra.* We stated in *Jozsa,* 364 Pa.Super. at 474, 528 A.2d at 608:

*Festa* holds that expert testimony is mandatory to establish existence of risks, existence of alternative methods of treatment and existence of risks attendant with such alternatives. It does not hold that expert testimony must establish all of the above before the question of whether there was an informed consent can go to the jury. *We emphasize that once expert testimony estab-*

*lishes the existence of an undisclosed risk of a recommended medical procedure (or of any of the above-mentioned factors)*, it is the role of the jury to decide whether that type of harm if it occurs, is a risk which a reasonable patient would consider in deciding on whether to undergo or reject the procedure.

(Emphasis added.)

*Festa v. Greenberg, supra,* stated that expert testimony is required: (1) to establish the existence of risks in a specific medical procedure; (2) to establish the existence of alternative methods of treatment; and (3) to establish the existence of risks attendant with such alternatives. *Jozsa,* if followed literally would substantially change the requirements of *Festa* concerning expert testimony and instead of requiring it to establish all three factors, it would be required only to establish one factor. Indeed, in *Maliszewski v. Rendon, supra,* we reiterated that expert testimony is required to establish the existence of risks, the existence of alternative procedures *and* the feasibility of the alternatives.

In my view, the court below properly disposed of the other issues raised and these are not addressed by the majority.

I would affirm the judgment of the court below.

WIEAND, Judge, concurring and dissenting:

I agree with and join the majority's determination that issues considered and disposed of by the trial court, even though raised in tardily filed post-trial motions, are not waived and are subject to review on appeal.

I dissent, however, from the majority's decision to grant a new trial. In my judgment, the trial court's jury instructions did not contain error; and, therefore, I would affirm the judgment entered on the verdict of the jury.

TAMILIA, Judge, dissenting:

I must respectfully dissent from the decision of the majority which would permit a trial court to consider sup-

plemental posttrial motions which are not timely filed. I also dissent to that portion of the Opinion and finding which would result in a new trial.

As to untimely supplemental post-trial motions, the majority cites the rule in which such motions are deemed to be waived on appeal, Pa.R.C.P. 227.1 **Post–Trial Relief:**

. . . .

**(b)** Post-trial relief may not be granted unless the grounds therefor,

. . . . .

(2) are specified in the motion. The motion shall state how the grounds were asserted in pre-trial proceedings or at trial. Grounds not specified are deemed waived unless leave is granted upon cause shown to specify additional grounds.

**(c)** Post-trial motions shall be filed within ten days after

(1) verdict,....

Pa.R.C.P. 227.1(b)(2) and (c)(1). The appellees argue that issues raised in the statement of questions (2), (3), (4) and (6) are waived as they were not raised in timely filed post-trial motions and the court did not give permission to file additional grounds for the motions although it considered the additional reasons for post-trial relief.[1] Relying on Supreme Court decisions in *Commonwealth v. Sheaff*, 518 Pa. 655, 544 A.2d 1342 (1988), modifying Per Curiam, 365 Pa.Super. 613, 530 A.2d 480 (1987), and *Kurtas v. Kurtas*, 521 Pa. 105, 555 A.2d 804 (1989), the majority finds the Supreme Court grants the trial court latitude to overlook any procedural defect which would not prejudice the rights of a party. A dissent filed by Justice Larsen, joined by Flaherty and Papadakas, JJ., in *Kurtas*, would find that where the appellate court determines from the record post-

---

1. Only by searching throughout appellant's post-trial motions and attempting to interpret their meaning in light of the above statements of questions involved can we *assume* appellant raised some of the issues in the timely filed original post-trial motions. Points 10, 11 and 12 are not specific enough to alert the court to objections now raised in statements of questions 2 and 3.

trial motions were not filed within the ten-day period prescribed by Rule 227.1, all matters raised in the appeal have been waived. *Id.*, 521 Pa. at 111, 555 A.2d at 808.

The majority holds that even when timely post-trial motions have not been filed, if they are subsequently addressed by the trial court, they are reviewable on appeal. Having made this finding, the majority goes on to say that Pa.R.C.P. 227.1 is not meaningless, attempting to salvage the rule by directing the court to exercise its discretion and to consider such issues only where good cause has been shown for non-compliance with the rule. When half of a rule is unenforceable, permitting the court to consider supplemental motions *after they are filed but before permission to file is granted upon good cause shown*, it turns the clear and specific mandates of an orderly procedure, in which *all* litigants are treated equally, to one based on whim. The Supreme Court in *Sheaff* and *Kurtas* never intended that ignoring Rule 227.1 could be permitted when a party was prejudiced thereby. The majority correctly attempts to provide for that consideration by requiring the trial court to make a specific finding that prejudice does not exist before considering the motions, thereby incorporating the rule of liberal construction, Pa.R.C.P. 126, into the trial court's consideration.

This case, on the basis of the majority holding, should either be remanded to have the trial court determine the issue of prejudice, or upon the record should find the existence of prejudice and, therefore, not consider the supplemental motions and treat those issues as waived. Whether on the basis of waiver because of prejudice to a party or on the merits, I believe the appellant cannot prevail and judgment should be affirmed. My review of the record and the post-trial proceedings in the trial court indicate issues two, three, four and six are not preserved for failure to include them in post-trial motions as required by Pa.R. C.P. 227.1(b). Claims not raised in post-trial motions are not preserved for appellate review. *In re Estate of Hall*, 517 Pa. 115, 535 A.2d 47 (1987); *Ecksel v. Orleans*, 360

Pa.Super. 119, 519 A.2d 1021 (1987); *see* Pa.R.C.P. 227.-1(b)(2) ("Post-trial relief may not be granted unless the grounds therefor ... are specified in the motion").

Although appellants filed amended or supplemental post-trial motions for new trial raising issues four and six, I would find this amended motion did not preserve the issues for appellate review. Appellants filed their supplemental motions more than four months after the verdict. Parties normally have no more than ten days to file post-trial motions. Pa.R.C.P. 227.1(c). In *Sheaff, supra,* the Superior Court held that, despite the fact the court below addressed them on the merits, supplemental post-trial motions in a criminal case would not preserve issues for appellate review, unless permission to file the motions was requested and granted on the record. We note that the Supreme Court in *Sheaff* found, without elaboration, the Superior Court "erred" in treating the issue of the sufficiency of the evidence as waived. Because the Supreme Court has not specifically overruled any particular holding by this Court in *Sheaff,* I believe we should continue to treat the holding with validity.

I point out that prior to the Supreme Court's disposition of *Sheaff,* we applied *Sheaff's* holding that permission of record must be granted for the filing of post-trial motions in *Commonwealth v. Pyett,* 372 Pa.Super. 291, 539 A.2d 444 (1988), and *Commonwealth v. MacSherry,* 371 Pa.Super. 164, 537 A.2d 871 (1988), without comment or action by the Supreme Court. More importantly, the Supreme Court denied allocatur in the case of *Commonwealth v. Kelly,* 365 Pa.Super. 28, 528 A.2d 1346 (1987), *allocatur denied,* 517 Pa. 598, 535 A.2d 1057 (1987), upon which *Sheaff* relied, in which we held that certain evidentiary issues were not preserved for failure to receive trial court approval to file supplemental post-trial motions in which the issues were presented nunc pro tunc. In *Commonwealth v. Mistretta,* 364 Pa.Super. 332, 334 n. 2, 528 A.2d 184, 185 n. 2 (1987), the proposition that issues are waived if raised in untimely supplemental post-trial motions without approval by the

trial court was also advanced without later action by the Supreme Court.

A panel of this Court in *Commonwealth v. Hewett*, 380 Pa.Super. 334, 551 A.2d 1080 (1988), "inferred" that the Supreme Court's finding the issue in *Sheaff* was preserved meant such issues are preserved when the trial court elects to address the issue on its merits. More recently, in *Kurtas, supra*, the Supreme Court held such action is acceptable in cases wherein the court had continuing jurisdiction and no prejudice was shown. *Kurtas* can be easily distinguished from the instant case. In reversing our Court's holding in *Kurtas v. Kurtas*, 368 Pa.Super. 648, 531 A.2d 39 (1987), the Supreme Court in a 4–3 decision (*with one justice of the majority concurring in the result*) held that untimely filed post-trial motions, if timeliness is not raised or objected to by the opposition or the trial court, may not be found to be waived by the Superior Court. The Court cited Pa.R.C.P. 126 wherein the trial court was granted "latitude to overlook any *procedural* defect which does not prejudice the rights of a party." *Kurtas* at 109, 555 A.2d at 806. The difference in the case sub judice is that here we are dealing with supplemental post-trial motions filed more than four months after the judgment in question, admission to which was objected to by counsel, whereas in *Kurtas* the delay in filing supplemental motions was slightly over one month after a change in counsel, and without objection. The late filing of original post-trial motions does not appear to present as great an opportunity for mischief as does late filing of supplemental post-trial motions, without review or permission of the court. There is inherent prejudice to the trial court and the opposing party in not knowing when, if ever, supplemental post-trial motions will be filed. I, therefore, believe the Supreme Court's decision in *Kurtas* applies only to instances where post-trial motions are untimely filed *without objection by the trial court or the other party* and the court thereafter rules on the merits. Such is not the case here as the time period was excessive and appellee

vigorously protested the filing of the unapproved supplemental motions.

This same requirement of obtaining approval of a request to file supplemental motions applies to criminal cases too. The similarity in the ten-day time period of Pa.R.Crim.P. 1123(a), the criminal rule of procedure for filing of post-trial motions applied in *Sheaff,* and Pa.R.C.P. 227.1(c), the civil rule of procedure for post-trial relief applicable here, is evident; like the criminal rules, nothing in the civil rules allows for unilateral extension of time to file post-trial motions. To permit the filing of post-trial motions beyond the period set by the rules, without trial court approval, circumvents the timely administration of the case. Without formal allowance of supplemental post-verdict motions nunc pro tunc, the ten-day requirement of Rule 227.1(c) is meaningless. This is particularly so when, as here, an extended period of time elapsed before the motion was filed. Must the court be indefinitely held at bay in finally ruling on post-trial motions at the election of one of the parties? I think not. A better solution, which is sometimes suggested, is to eliminate post-trial motions entirely with the appeal to follow immediately from the judgment.

This Court has applied fundamental procedural principles first set forth in criminal cases to civil cases in the past. In *Carnicelli v. Bartram,* 289 Pa.Super. 424, 433 A.2d 878 (1981), we considered the degree of specificity required in post-verdict motions in a civil case in light of the Supreme Court's Opinions in *Dilliplaine v. Lehigh Valley Trust Company,* 457 Pa. 255, 322 A.2d 114 (1974), and *Tagnani v. Lew,* 493 Pa. 371, 426 A.2d 595 (1981), and the Supreme Court's express disapproval of boilerplate post-trial motions in criminal cases, *Commonwealth v. Waters,* 477 Pa. 430, 384 A.2d 234 (1978), to conclude that the same disapproval of boilerplate motions or general assignments of error should be extended to civil cases. Likewise, I would extend the principle to civil cases, holding that permission *must* be requested and granted *on the record* before supplemental post-trial motions may be filed. Rule 227.1(c)'s silence on amending or supplementing requests for post-trial relief mandates this procedure. Accordingly, I would find appel-

lants' fourth and sixth issues are not preserved for appeal and are therefore waived. My review of the record, however, leads me to conclude appellant's arguments concerning those motions are without merit and the trial court's disposition thereof is correct.

As correctly argued by appellee, appellants' first and seventh issues on appeal are not preserved because appellants' post-trial motions presented these in a boilerplate fashion contrary to the requirements of Pa.R.C.P. 227.1(b). *Jackson v. Spagnola*, 349 Pa.Super. 471, 503 A.2d 944 (1986); *Carnicelli, supra.*[2] Additionally, appellants' failure to include issue seven in their statement of questions involved on appeal violates the mandatory precepts of Pa.R.A.P. 2116(a), which states that "ordinarily no point will be considered which is not set forth in the statement of questions involved or suggested thereby."

Because appellants' fifth claim on appeal, concerning an alleged error by the trial court in allowing appellee's expert witness Dr. Robert Schreckengaust to testify beyond the fair scope of his report in contravention of Pa.R.C.P. 4003.-5(c), is properly presented in appellants' post-trial motions, I would address the issue on the merits. Without citation to case law, appellants argue the testimony by Dr. Schreckengaust was beyond the fair scope of the report submitted by him when he was asked to express an opinion as to whether an abnormally large ovary should be removed, the likelihood of such an ovary becoming cancerous, and whether or not there was a risk in a patient like appellant from taking premarin as a hormone replacement after her last ovary was removed.

"The relevant inquiry in any case involving the interpretation of Rule 4003.5, ... is whether there has been surprise or prejudice to the party which is opposing the proffered testimony of the expert, based upon any alleged deviation between the matters disclosed during discovery, and the testimony of such expert at trial." *Trent v. Trotman*, 352 Pa.Super. 490, 502, 508 A.2d 580, 587 (1986); *Augustine v.*

---

**2.** I believe Judge Johnson improperly ignores the boilerplate nature of the motion for judgment n.o.v. when he reaches the merits of the issue in his Concurring and Dissenting Opinion.

*Delgado,* 332 Pa.Super. 194, 481 A.2d 319 (1984). As we explained in *Wilkes–Barre Iron v. Pargas of Wilkes–Barre,* 348 Pa.Super. 285, 290, 502 A.2d 210, 212–13 (1985):

> [I]n deciding whether an expert's trial testimony is within the fair scope of his report, the accent is on the word "fair." The question to be answered is whether, under the particular facts and circumstances of the case, the discrepancy between the expert's pretrial report and his trial testimony is of a nature which would prevent the adversary from preparing a meaningful response, or which would mislead the adversary as to the nature of the appropriate response.
>
> . . . .
>
> "Fair scope" contemplates a reasonable explanation and even an enlargement of the expert's written words.

An expert's report is adequate to allow examination on a particular issue at trial when the report provides sufficient notice of the expert's theory to enable the opposing party to prepare a rebuttal witness. *Martin v. Johns–Manville Corporation,* 322 Pa.Super. 348, 469 A.2d 655 (1983).

Reviewing the testimony, expert's report and appellees' answers to interrogatories, I find no undue surprise or prejudice in the line of questioning objected to by appellants. Dr. Schreckengaust repeatedly expressed the opinions in his report that removal of the remaining ovary was proper under the circumstances and that his review of the pathology report confirmed Dr. Nagle's diagnosis that the ovary was abnormal and would "certainly" have required removal sometime in the future. Elaboration of a reasonable explanation for the removal of the ovary, i.e. cancer, was permissible at trial and within the fair scope of information obtained through discovery. Lastly, Dr. Schreckengaust's report clearly details the possible risks of artificial replacement hormones or estrogen and, thus, any objection to that testimony is without merit. The jury was, therefore, presented with appropriate expert testimony from which it could fairly decide that the operating physician performed within a reasonable degree of medical competence, exercising proper judgment in the removal of the

ovary. Not all possible exigencies can be predicted or discussed prior to an operation and doctors must be permitted to exercise sound medical judgment in dealing with such contingencies, lest there be greater danger to the patient or the need to conduct additional surgical procedures that could have been avoided. To rule otherwise is to invite a greater likelihood of medical malpractice actions for *failure* to exercise sound medical procedures when they are clearly warranted.

I would find issues two and three waived for appellant's failure to preserve them in original post-trial motions, and issues four and six waived for failure to request permission to file supplemental post-trial motions. This is especially true in view of the fact appellee objected to their filing. Issues one and seven are waived due to their presentation in a boilerplate fashion.

Having carefully reviewed all of the issues, however, I would affirm the judgment entered in the trial court.