Coleman et al., Appellants, *v.* Pittsburgh Coal Company, Appellant.

Argued April 24, 1945. Before BALDRIGE, P. J., RHODES, HIRT, RENO, ROSS and ARNOLD, JJ. (DITHRICH, J., absent.)

*John C. Bane, Jr.*, with him *Elder W. Marshall* and *Reed, Smith, Shaw & McClay*, for plaintiffs.

*Robert A. Applegate*, with him *Rose & Eichenauer*, for defendant.

OPINION BY ARNOLD, J., July 19, 1945:

Plaintiffs and their predecessor trustee owned the gas and oil rights in some six and one-half acres of land in Allegheny County, and the Pittsburgh Coal Company was the owner of the coal thereunder. On March 17, 1927, plaintiffs' predecessor trustee made a written agreement with the Coal Company to provide mutual safeguards in connection with the drilling and operation of gas wells which passed through the defendant's coal; and the Coal Company agreed to leave a solid block of coal forty feet by forty feet around each well. A producing gas well was drilled and placed in operation by the plaintiffs.

The plaintiffs brought an action of assumpsit against the Pittsburgh Coal Company on August 8, 1941, and in their statement of claim alleged that *"on or about Octo-*

*ber 15, 1935,* the defendant, in breach and violation of its agreement . . . mined and removed much of the coal underlying the tract of sixteen hundred square feet surrounding . . . the gas well . . . as a result whereof the strata of earth, rock and coal surrounding the casing . . . were caused to move, slip and subside . . . thereby causing the casing . . . to be so bent [and] broken . . . that it was impossible thereafter . . . to recover further gas . . . in paying quantities, and . . . the value of said well was largely or wholly destroyed . . ." The plaintiffs offered evidence which if believed by the jury would establish that (a) the defendant breached the agreement and mined within the sixteen hundred square feet; (b) that this wrongful mining injured or destroyed the well and its production; and (c) that the amount of damage suffered by the plaintiffs was in the neighborhood of $12,000.00.

The defendant in its affidavit of defense averred (a) that it did not mine within the reserved block; (b) that no mining of the defendant injured the plaintiffs' well or production; (c) that the Statute of Limitations barred recovery since defendant had done no mining in the vicinity after January 1, 1932. The defendant offered evidence which if believed by the jury would establish (a) that the defendant did not mine within the reserved area; (b) that no mining of the defendant injured the plaintiffs' well or production; (c) that defendant did not mine in the vicinity after January 1, 1932; (d) that plaintiffs' well (alleged to be damaged) was of a value of not over five hundred dollars, its useful life being gone; (e) that there was no salvage value to the casing and tubing because of the cost of removing it.

The verdict of the jury was for the plaintiffs in the sum of eight hundred dollars, thereby establishing plaintiffs' contention that the defendant mined the reserved coal and establishing the defendant's contention that the damage was little or nothing.

Plaintiffs filed a motion for a new trial which was refused, judgment entered and plaintiffs appealed. The

plaintiffs assign as error a portion of the court's charge in substance, that for the plaintiffs to recover the damage must have been caused by mining subsequent to August, 1935, i.e. within the Statute of Limitations. The plaintiffs' statement declared that the mining occurred about October 15, 1935. No motion was made by plaintiffs to amend as to any breach *prior* to October 15, 1935. The defendant had pleaded a six year Statute of Limitations. Plaintiffs presented no point to the effect that the written instrument was a specialty to which the Statute of Limitations did not apply. In addition, the jury found for plaintiffs that the breach was committed *after* August, 1935. This assignment of error must, therefore, be overruled.

The plaintiffs-appellants argue that the instrument was a specialty,[1] but in view of what has been said it is unnecessary to decide this, the court's charge following both the pleadings and the testimony, and the trial court in addition certifying, in its opinion refusing a new trial: "The way the case was tried clearly indicated that the plaintiffs were also of the opinion that the statute of

---

[1] The agreement concluded: "IN WITNESS WHEREOF, The party of the first part has hereunto set his hand and seal, and the party of the second part *has caused* this *agreement to be executed* by the hands of its proper officers . . . " It was signed "Pittsburgh Coal Company, By C. E. Lesher, Vice President." To the left of the page underneath the word "Attest:" was the signature "Aaron Westlake, Secretary." The corporate seal appeared just under the Secretary's signature. Did the Corporate Seal purport authentication, or was it the badge of a specialty? Williston on Contracts, Vol. 1, Section 271a, states, "Under the modern view this function (authentication by corporate seal) must be distinguished from its use as a general seal . . . the mere fact that the corporate seal appears on the instrument other than in the usual place of the private seal would not make the instrument a . . . specialty in the absence of a recital affixing a seal . . . to have it serve the function of a general seal." See also *Brooklyn Public Library v. City of New York*, 226 N. Y. Supp. 491; *General Petroleum Corp. v. Seaboard Terminals Corp.*, 19 F. Supp. 882; 23 F. Supp. 137. In the instant case nothing on the face of the agreement indicated that the corporate seal was affixed for other than authentication purposes.

limitations was as to coal mined within six years. Having thus tried its (their) case on that theory, we are not disposed to grant the plaintiffs another trial."

The plaintiffs also raise the question that the verdict was grossly inadequate and it is argued that this was in some manner occasioned by the charge of the court in regard to the Statute of Limitations in that the jurors' minds were turned to extraneous matters. But a reading of the testimony shows that if the jury believed defendant's testimony, the plaintiffs' damage was not over five hundred dollars, and this being so, the verdict is three hundred dollars in excess of defendant's contention. As to plaintiffs' argument concerning defendant's testimony as to salvage value, the effect of that testimony was for the jury. The court below, in its opinion refusing a new trial stated, "We do not feel justified in granting a new trial on the ground of inadequacy." Where the trial court *grants* a new trial on the ground of inadequacy the appellate courts will not interfere in the absence of a gross abuse of discretion: *Schwartz v. Jaffe,* 324 Pa. 324, 188 A. 295; *Pretka v. Wilson,* 325 Pa. 491, 190 A. 722. When the trial court *refuses* relief against an allegedly inadequate verdict the appellate court *will exercise even greater caution in reviewing* its action. It was said by President Judge Rice in *Palmer v. Leader Publishing Co.,* 7 Pa. Superior Ct. 594, 598: "The power to grant a new trial because of the inadequacy, as well as the excessiveness, of the damages allowed by the jury is undisputed, but this power is much more rarely exercised in the former than in the latter case. If such caution is properly exercisable by the trial court, much more cautiously should an appellate court proceed where the trial court, after a conscientious review of the case, has refused to set aside the verdict. No mere difference of opinion, nothing short of a clear conviction, compelled by the evidence, that the jury must have been influenced by partiality, passion or prejudice or by some

misconception of the law or the evidence, will justify an appellate court in declaring that the trial court was guilty of an abuse of discretion in refusing a new trial for inadequacy of damages where neither the evidence in the particular case nor the law applicable thereto furnished any definite standard by which they might be measured, and the jury had no other guide in arriving at the amount to be awarded but pure conjecture." See also *Stevens v. Frank*, 151 Pa. Superior Ct. 222, 223, 30 A. 2d 161; *Carpenelli v. Scranton Bus Co.*, 350 Pa. 184, 187, 38 A. 2d 44. This assignment of error must be overruled.

In Appeal No. 35 April Term, 1945 the assignments of error are overruled, and the judgment is affirmed.

To No. 49 April Term, 1945 the defendant appeals from the same judgment assigning as error the refusal of the court to enter judgment n. o. v. for the Pittsburgh Coal Company. Here the allegation is that plaintiffs did not sustain their burden of proof of showing that the reserved coal was mined within the Statute of Limitations. The inferences to be drawn from the testimony were for the jury which was not bound to, but did, believe plaintiffs' evidence however characterized by the defendant. The defendant complains that its mine maps and engineering data were unimpeached documentary proof and could not be overcome by the oral testimony of the plaintiffs. In spite of arguments pro and con as to the effect or meaning of plaintiffs' testimony in rebuttal or the cross-examination of defendant's witnesses it was for the jury to say whether or not defendant's "mine maps and engineering data" were impeached. Defendant's testimony was not conclusive: *Hewitt v. Democratic Pub. Co.*, 260 Pa. 59, 103 A. 499; *Stewart v. Pa. State Camp, etc.*, 122 Pa. Superior Ct. 30, 184 A. 476; *Harbridge v. Mutual Fire Ins. Co., etc.*, 151 Pa. Superior Ct. 278, 30 A. 2d 360.

In No. 49 April Term, 1945 the judgment is affirmed.