419 A.2d 30

**Lori L. GUDAT, Appellant,**

**v.**

**Milton HEUBERGER.**

Superior Court of Pennsylvania.

Argued June 13, 1979.

Filed Feb. 8, 1980.

Lewis H. Markowitz, York, for appellant.

George F. Douglas, Carlisle, for appellee.

Before SPAETH, STRANAHAN and SUGERMAN, JJ.*

SPAETH, Judge:

This is an appeal from an order denying a motion filed by appellant as the plaintiff below for a new trial limited to the issue of damages.

The case arises from an automobile accident that occurred on March 17, 1972, at approximately 8:40 p. m. Appellant described the accident as follows. She and a friend had been shopping at the York Mall in York County. Appellant got into the driver's side of her automobile; the friend occupied the right front seat. Appellant started the automobile, pulled out of the parking space, and drove down the aisle between the rows of parked cars. She stopped at the end of the aisle and looked both ways along the thoroughfare that intersected the aisle. She saw appellee coming toward her from her right. Since there was a stop sign against appellee, appellant thought he would stop, and she pulled slowly into the intersection to make a left turn. Suddenly her passenger shouted that appellee was running the stop sign. Appellant applied her brakes but appellee's car collided with the right front side of her car. The force of the collision threw appellant's passenger into her with such force that appellant was thrown against the door.

Appellant's passenger described the accident in the same way, including the fact that the force of the collision threw him across the seat into appellant and that she fell against the door.

Appellee disputed appellant's description of the accident. He testified that he had stopped at the stop sign and was past it and proceeding toward the parking aisle at moderate

---

* President Judge JOHN Q. STRANAHAN, of the Court of Common Pleas of Mercer County, Pennsylvania, and Judge LEONARD SUGERMAN, of the Court of Common Pleas, of Chester County, Pennsylvania, are sitting by designation.

speed when appellant suddenly pulled out in front of him, causing the collision. He counterclaimed for the damages to his automobile in the amount of $403.17.

Appellant testified that she spent $570.88 to repair the damages to her automobile. She also claimed that she suffered physical injuries as a result of the collision. She admitted having suffered a previous injury to her neck and back in an earlier automobile accident in 1968. She testified, however, that the discomfort she had experienced because of the 1968 injuries had subsided by the time of the 1972 accident and that she had been able to resume normal activities; she said that she had stopped seeing the doctor for the 1968 injuries some time in 1970. She described the injuries suffered in the 1972 accident as follows. On the day after the accident she woke up with pain in her neck. She went to her family physician and was given muscle relaxants. She also went to see Dr. John Danyo, the physician who had treated her back and neck after the 1968 collision. Dr. Danyo examined her and told her to wear a collar and to exercise but to return if the pain did not subside. When the pain did not subside, he sent her for physical therapy and warned that an operation might be necessary. In October 1974, she was admitted to the hospital for a myelogram examination, and after this examination, she was operated on. The surgery involved removing a piece of bone from her hip and using it to replace the damaged portion of a disk in her neck. She remained in the hospital for two weeks. She incurred medical bills of $2,870.89 and lost $270.60 in wages. She testified that she still had pain and discomfort.

Dr. Danyo also testified as follows. He first saw appellant in June 1968, after the 1968 collision. He diagnosed her injury as whiplash of the neck and a sprain of the ribs. He continued treating her for these injuries until 1970. She did not return for treatment until March 1972, after the 1972 collision. He noted that she had a 45% restriction of motion in her neck and some low back strain, and ordered her to wear a collar and to exercise. On April 13, 1972, she returned to him complaining of pain and numbness in her

right hand. He diagnosed that her condition had worsened to the point where the swelling in her neck had caused a pinched nerve, and ordered traction. She returned in February 1974 with continued neck and low back pain. In October 1974 she was admitted to the hospital for a myelogram and surgery was performed. Dr. Danyo stated at trial that the operation was successful in so far as it rid appellant of the pinched nerve but he also admitted that she would continue to have neck weakness for an indefinite period. He expressed the opinion that the injuries received in the 1972 collision had aggravated the 1968 injuries. On cross-examination he admitted that in 1970 he had said that the 1968 injuries were permanent and that there was a distinct possibility of surgery at some future date. He also admitted that appellant might have needed surgery and might have experienced weakness of the neck even if the 1972 collision had not occurred. He nevertheless stated that the 1972 collision aggravated the 1968 injuries; in his words, the 1972 collision was the "straw that broke the camel's back."

The jury decided in appellant's favor both on her claim and on appellee's counterclaim, and awarded her $580 in damages. In announcing the verdict the jury foreman said that the amount was for "car repairs." Appellant filed a motion for a new trial limited to the issue of damages on the grounds that the verdict was against the weight of the evidence and that the damages awarded were inadequate. In denying this motion, the lower court stated: "The jury had before it in this case the testimony surrounding the accident, including the impact produced by it and the indefiniteness of Dr. Danyo concerning the resulting consequences to [appellant's] prior injury. They apparently chose not to accept Dr. Danyo's opinion that the accident aggravated her pre-existing condition. There is no basis for a new trial." Opinion of the Lower Court on p. 3.

In *Coleman v. Pittsburgh Coal Co.*, 158 Pa.Super. 81, 43 A.2d 540 (1945), this court stated: "Where the trial court *grants* a new trial on the ground of inadequacy the appellate courts will not interfere in the absence of a gross abuse of

discretion: . . .. When the trial court *refuses* relief against an allegedly inadequate verdict the appellate court *will exercise even greater caution in reviewing* its action." *Id.,* 158 Pa.Super. at 85, 43 A.2d at 542; *accord Hevener v. Reilly,* 266 Pa.Super. 386, 404 A.2d 1343 (1979); *Bronchak v. Rebmann,* 263 Pa.Super. 136, 397 A.2d 438 (1979); *Cohen v. Food Fair Stores Inc.,* 190 Pa.Super. 620, 155 A.2d 441 (1959). "[T]he function of determining whether a jury's verdict is arbitrary and capricious lies with the trial court, and its decisions will not be set aside in the absence of clear error of law or palpable abuse of discretion." *Bronchak v. Rebmann, supra* 263 Pa.Super. at 140, 397 A.2d at 440. While the appellate court will review the entire record to determine whether an inadequate and unjust verdict has occurred, *Prince v. Adams,* 229 Pa.Super. 150, 324 A.2d 358 (1974), it is "justified in declaring the lower court guilty of such an abuse of discretion only if [it is] clearly convinced by the record that the jury was influenced by partiality or some misconception of the law or the evidence." *Gottlob v. Hillegas,* 195 Pa.Super. 453, 457, 171 A.2d 868, 870 (1961).

Here, as stated by the lower court, the issue of the inadequacy of the verdict centers on the effect of the 1972 collision on the injuries suffered in the 1968 collision. There is no doubt that appellant had a serious injury; the operation proves that. Indeed, there appears to be no rational explanation for the award except that the jury attributed all of appellant's pain and suffering and medical expenses and lost wages to the 1968 injuries.

In support of the lower court's order appellee cites this court's decision in *Bronchak v. Rebmann, supra.* In that case the jury returned with a verdict in favor of the plaintiff in the amount of $63.30. This court affirmed the lower court's denial of the plaintiff's motion for a new trial because the plaintiff's expert and the defendant's expert disagreed on whether the accident had aggravated the plaintiff's pre–existing degenerative condition. The $63.30 award was the exact amount the plaintiff had spent on an emergency room examination after the accident.

The situation presented in *Bronchak* differs from the situation presented in this case in two significant ways.

First, in *Bronchak* the defendant offered expert testimony that the accident had not aggravated the pre–existing condition, but in this case we have no such testimony. All we have is the uncontradicted testimony of Dr. Danyo that the 1972 collision definitely did aggravate the 1968 injuries. Moreover, other evidence presented was consistent with and supported the conclusion that aggravation had occurred. Both appellant and her passenger testified that the impact was such that the passenger was thrown across the seat into appellant and that appellant herself was thrown against the door. *Compare Kirby v. Carlisle*, 178 Pa.Super 389, 116 A.2d 220 (1955) (slight contact). The impact was thus of a force that might well cause aggravation of previous injuries. There was also the testimony by appellant and Dr. Danyo that in 1970 she had stopped coming to him for treatment for the 1968 injuries, and that she had only returned with complaints about her back and neck in March 1972, after the 1972 collision. While Dr. Danyo did admit that appellant might have needed surgery and might have experienced weakness of the neck even if the 1972 collision had not occurred, this admission did not undercut his conclusion that aggravation occurred. Thus, even if we assume that the jury decided not to award appellant any amount for the operation or for her future suffering, still this would not explain the jury's failure to award her that portion of her pain and suffering and her medical expenses attributable to the aggravation of her injuries by the 1972 accident.

Second, in *Bronchak* the jury at least awarded the plaintiff the expenses she incurred for an examination to determine the extent of her injury from the accident. Similarly, in *Hollins v. Pittsburgh Rwys.*, 188 Pa.Super. 141, 146 A.2d 622 (1958), while the jury gave the allegedly injured child nothing, it awarded his parents the medical expenses incurred by them in their effort to determine whether he had

been injured. *See Lesoon v. Yellow Cab Co.*, 195 Pa.Super. 470, 171 A.2d 877 (1961) (plaintiff reimbursed for hospital expenses incurred in determining whether collision had caused her an injury). Here, by contrast, the jury gave appellant nothing for the expenses of her first visits to her family doctor and to Dr. Danyo to determine the extent of her injuries from the 1972 collision and whether they had aggravated the 1968 injuries.

■ While the jury is free to believe or disbelieve all or part of a plaintiff's testimony, even though it was uncontradicted, *see Hollins v. Pittsburgh Rwys., supra*, still the fact that here the testimony of aggravation was uncontradicted and was supported by other evidence, when coupled with the fact that the jury refused to reimburse appellant even for the expenses of her first visits to her family physician and Dr. Danyo, results in our having little faith in the fairness of the jury's verdict. *See Hevener v. Reilly, supra.* If, as in *Bronchak*, the defendant had offered contradictory evidence, or if the jury had at least reimbursed appellant for some of her expenses in going to her family doctor and Dr. Danyo immediately after the accident, perhaps we should not grant appellant a new trial. Here, however, we are unable to avoid the conclusion that in reaching its verdict, the jury must have acted under some misapprehension of the law or the evidence. Accordingly, appellant must receive a new trial.

■ The question remains, however, whether the new trial should be limited to the issue of damages. This court will grant a new trial limited to the issue of damages where the issue of liability has been fairly determined and the issue of damages is readily separable from the issue of liability. *See Lininger v. Kromer*, 238 Pa.Super. 259, 358 A.2d 89 (1976). In cases involving inadequate verdicts, however, we are reluctant to grant new trials limited to the issue of damages and will consider the issue of liability to have been

fairly determined only where it is "contested," "clear," or "free from doubt." *Gagliano v. Ditzler*, 437 Pa. 230, 263 A.2d 319 (1970). The reason for our reluctance is the possibility that the inadequate verdict may in fact have been a compromise verdict, that is, a verdict reflecting an agreement among the jurors to lessen the plaintiff's award because of evidence that he contributed to the injury. *See Lambert v. PBI Industries*, 244 Pa.Super. 118, 366 A.2d 944 (1976). As this court explained in *Lambert*:

> In the inadequate verdict situation, the suspicion that a compromise verdict was reached dictates that, in fairness to both parties, a limited new trial should not be ordered unless the evidence of liability is so clear and free from doubt as to overcome the inference that the issue of liability was *not* fairly determined.
>
> *Id.*, 244 Pa.Super. at 142, 366 A.2d at 956 (emphasis in original).

■ The accident in this case was an intersection collision and the issue of liability was contested. *Compare Stathas v. Wade*, 251 Pa.Super. 269, 380 A.2d 482 (1977) (rear end collision, defendant offered no evidence to refute his liability). While the jury's verdicts on appellant's claim and appellee's counterclaim seem to indicate that appellant was not negligent, we cannot say that the issue of liability is clear or free from doubt. Accordingly, the new trial will include the issue of liability as well as the issue of damages. The recent decision by another panel of this court in *Nardi v. Stayton*, 270 Pa.Super. 267, 411 A.2d 520, does not require a different result. There, in granting a new trial limited to the issue of damages in a case involving an intersection collision, the panel specifically relied on the fact that the plaintiff's version of the accident was supported by a disinterested eyewitness, while the defendant's was unsupported and contained inconsistencies. The panel was therefore able to conclude that the issue of liability was free from doubt. Here we have no such evidence and cannot reach the same conclusion.

Reversed and remanded for a new trial on both the issue of liability and the issue of damages.