John X. BEZERRA and Audrey
Bezerra, H/W, Appellants,

v.

NATIONAL RAILROAD PASSENGER
CORPORATION, Appellee.

Superior Court of Pennsylvania.

Argued April 4, 2000.

Filed Sept. 13, 2000.

Marvin I. Barish, Philadelphia, for appellants.

Gerald T. Ford, Newark, New Jersey, for appellee.

BEFORE: McEWEN, President Judge, JOYCE, and TAMILIA, JJ.

McEWEN, President Judge:

¶ 1 This appeal has been taken from the judgment entered on a jury verdict in favor of appellee, the National Railroad Passenger Corporation, and against appellants, John and Audrey Bezerra, in this action under the Federal Employers Liability Act (FELA) for personal injuries allegedly sustained by appellant, John X. Bezerra, in a train derailment. Appellants contend they are entitled to a new trial (1) by reason of the failure of the jury to award any damages for the injuries sustained by John X. Bezerra when certain of the cars of a train upon which he was serving as a conductor were derailed, and (2) by reason of numerous assignments of trial court error. We disagree and, therefore, affirm the judgment entered on the verdict of the jury.

¶ 2 The trial court has provided an apt summary of the occurrence out of which this action arises:

On November 23, 1996, plaintiff was employed as a conductor for defendant on

Train Mail # 12 en route from Newark, New Jersey to New York. Plaintiff's regular duties as a conductor included such things as: collecting tickets, assisting passengers, and occasionally, placing hoses and cables on the trains. That day, as the train crossed the Secaucus Bridge over the Hackensack River, a connector cracked causing the derailment of numerous train cars. However, the specific train car in which plaintiff was in did not derail. Plaintiff, nonetheless, was jolted, and claims to have hit his head on an overhead rack and fallen to the floor.

¶ 3 Appellants have framed, in their brief, the following arguments in support of their request for a new trial:

The trial court clearly and palpably abused its discretion when it sustained a jury verdict in favor of the defendant despite uncontroverted expert medical testimony from both parties that plaintiff had, in fact, suffered a compensable injury as a result of the accident.

The trial court erroneously admitted evidence of plaintiff's prior lawsuit and settlement of claim, including photographs of plaintiff's home and an unauthenticated satisfaction of mortgage, despite the absence of any competent medical evidence that the injuries sustained in that accident were causally related to those suffered in the instant action.

The trial court, despite a prior *in limine* ruling, erroneously permitted the defendant to adduce testimony that other Amtrak employees injured in the derailment had returned to full duty employment with the railroad.

The trial court erroneously admitted into evidence and permitted defendant to publish to the jury a job description which was not authenticated.

The trial court committed clear and reversible error when it charged the jury that if they found a violation of the sequestration order that they then could conclude that the testimony of those witnesses who violated the order could be ignored.

The trial court's causation instruction erroneously engrafted common law standards of proximate causation onto the FELA.

The trial court committed reversible error when it permitted defendant's medical expert to testify beyond the four corners of his report.

¶ 4 As the learned Judge Nitza I. Quiñones Alejandro, in her 25–page opinion, has thoroughly discussed and properly rejected five of the issues raised by appellants, it would be purposeless for this Court to elaborate upon that discussion. We, therefore, limit ourselves to the first and sixth issues raised by appellants, namely:

The trial court clearly and palpably abused its discretion when it sustained a jury verdict in favor of the defendant despite uncontroverted expert medical testimony from both parties that plaintiff had, in fact, suffered a compensable injury as a result of the accident.

The trial court's causation instruction erroneously engrafted common law standards of proximate causation onto the FELA.

¶ 5 Preliminarily we note our standard of review:

In *Thompson v. City of Philadelphia*, 507 Pa. 592, 493 A.2d 669 (1985), our Supreme Court explained that an appellate court reviews the denial of a motion for a new trial in the same manner as the grant of a new trial. It is settled that the grant or denial of a new trial rests in the discretion of the trial court. *Kiser v. Schulte*, 538 Pa. 219, 648 A.2d 1 (1994).

It is well settled that in reviewing an order to grant a new trial our standard of review is limited to determining whether the trial court abused its discretion or committed an error of law. *Gouse v. Cassel*, 532 Pa. 197, 205, 615 A.2d 331, 335 (1992); *Spang*

& Co. v. U.S. Steel Corp., 519 Pa. 14, 24, 545 A.2d 861, 865 (1988). A trial court may only grant a new trial when the jury's verdict is so contrary to the evidence that it "shocks one's sense of justice." *Kiser v. Schulte*, 538 Pa. 219, 225–227, 648 A.2d 1, 4 (1994); *Burrell v. Philadelphia Elec. Co.*, 438 Pa. 286, 289, 265 A.2d 516, 518 (1970). *Livelsberger v. Kreider*, 743 A.2d 494, 495 (Pa.Super.1999), quoting *Neison v. Hines*, 539 Pa. 516, 518–20, 653 A.2d 634, 636 (1995).

¶ 6 Appellants contend that the verdict of zero damages was against the weight of the evidence because, according to appellants, "the uncontroverted expert testimony of both parties established that Mr. Bezerra had sustained some cervical and lumbar injury as a result of the accident." At trial, Dr. Simon, appellant's expert, admitted that appellant suffered from degenerative disc disease, but opined that Mr. Bezerra's herniated discs had been traumatically caused by the derailment, exacerbating the degenerative disc disease:

Q. [BY MR. BARISH, Attorney for appellant] Now, during the time I notice that Mr. Bezerra has returned to you and complained of recurrence of left back pain, neck pain, could you tell us, Doctor, whether, based upon reasonable medical certainty, the diagnosis which you made of herniated disc in the neck and herniated disc in the lumbar spine are a result of the injury sustained by him during the derailment?

A. Yes. In my opinion, with reasonable medical certainty, as they say, the injuries that he sustained were the superimposed disc herniation on a degenerative disc in the low back and the superimposed disc herniation on degenerative discs in the neck.

This testimony, however, was not uncontradicted, as Dr. Heppenstall, appellee's medical expert, testified that appellant suffered from degenerative disc disease and disc herniations that had been caused solely by his degenerative disc disease. Specifically, Dr. Heppenstall testified that appellant had degenerative changes in the cervical spine at C5–C6 and C6–C7, and in the lumbar spine at L5, and degenerative disc disease herniations at C3 (central herniation) and C6 (left side herniation). Dr. Heppenstall testified that all MRI films indicated appellant's injuries were degenerative and not caused by the derailment. Specifically, Dr. Heppenstall testified as follows:

Q. [BY MR. LANDMAN, Attorney for appellee] And did you actually review some MRI films as well?

A. Yes.

Q. And they were taken at Rittenhouse Radiology?

A. Yes.

Q. And when you reviewed those films, what did they show?

A. Well, they showed that he had some degenerative cervical disc disease at C5–6 and C6–7.

\* \* \* \*

Q. And what did the MRI show of the lumbar spine?

A. It showed that he had degenerative lumbar disc disease at L5.

\* \* \* \*

Q. Doctor, based upon your examination of Mr. Bezerra and based upon your review of the MRI films and based upon your review of the records, which were provided to you, did you think that Mr. Bezerra had any limitation whatsoever with respect to his ability to work?

A. No.

Q. And Doctor, do you hold that opinion with a reasonable degree of medical certainty?

A. Yes.

Q. And that's with respect to any type of work, is that correct?

A. I don't think—no, I have to retract that. He is able to do light and medium

work, which is what the people at NovaCare did on their examination. And I think that's reasonable given his history.

Q. His history being what?

A. His history being that he was involved in a significant accident in 1984 [1] and that he was jostled around this train business and has some degenerative cervical and lumbar disc disease, which I would expect in his age group.

Q. Right, but you don't believe that this degenerative disc disease was caused by the train accident, is that correct?

A. No, I certainly do not.

Q. I'm sorry, you do—

A. I do not believe it was caused by it.

Q. Doctor, what is your opinion as to what injury he did suffer, if any, in the train accident based upon your review of the records, the MRIs and the medical records you've been provided?

A. It's my reasonable medical opinion that what this patient had was degenerative cervical and lumbar disc disease underlying, that is predating this accident. And then during the accident, he was jostled around. This flared up the degenerative cervical and lumbar disc disease to the point **where he had neck pain and headaches and low back pain, which is common**. (emphasis added)

Appellants contend that this testimony demonstrates that they are entitled to a new trial since Dr. Heppenstall "conceded that the derailment had precipitated an aggravation of Mr. Bezerra's pre-existing degenerative disc disease which was not only pain producing but permanently restricted him to medium—and light-duty work." Appellants rely, *inter alia,* on the following cases: *Neison v. Hines,* 539 Pa. 516, 653 A.2d 634 (1995); *Mano v. Madden,* 738 A.2d 493 (Pa.Super.1999); *Hawley v. Donahoo,* 416 Pa.Super. 469, 611

A.2d 311 (1992), and *Gudat v. Heuberger,* 275 Pa.Super. 535, 419 A.2d 30 (1980). Having carefully reviewed the testimony of Dr. Heppenstall in light of the evidence produced at trial and the briefs of both parties, we find the argument of appellants misplaced.

¶ 7 Our Supreme Court, in reversing the Superior Court and remanding for a new trial in *Neison v. Hines, supra,* noted: "Hines' own witness conceded that Neison had been injured when he opined that she had a healed neck sprain and a healed shoulder blade injury. Thus, the fact that Ms. Neison suffered from objective injuries was not 'vigorously contested' ... Both Ms. Neison's experts unequivocally testified that she suffered objective injuries directly attributable to her accident with Ms. Hines. Where even the medical expert produced by the defense conceded the injury, the jury's disbelief was unwarranted." *Id.* at 524–527, 653 A.2d at 639–640. Likewise, in *Mano v. Madden, supra,* this Court upheld the trial court's award of a new trial after a jury verdict in favor of the defendant, finding that the defense expert conceded that plaintiff had suffered some injury when he testified: "I made two diagnoses. The first was of the strains of the neck and back, sustained September 21, 1993, resolved. That is that they healed by the time I examined the man." *Mano v. Madden, supra,* 738 A.2d at 496. The *Mano* Court concluded that "both medical experts believed that Mr. Mano suffered some strain to his neck and back as a result of the accident, differing only as to the extent and duration of his injury." *Mano v. Madden, supra,* 738 A.2d at 497.

¶ 8 In *Hawley v. Donahoo, supra,* the defendant conceded liability and agreed that the plaintiff had suffered a compression fracture of his back. Thus, this Court, in reversing the order of the trial court which had denied a new trial, held

1. As a result of a serious motor vehicle accident in 1984, Mr. Bezerra sustained herniated discs in both the upper and lower spine, was

hospitalized as a result of his injuries for 3 months, and was out of work for 11 months.

that "the existence of the fractured vertebra was not questioned by the [defendant] on cross-examination, and therefore the jury's refusal to believe in the existence of this injury was unwarranted". *Hawley v. Donahoo, supra,* 611 A.2d at 313. Finally, in *Gudat v. Heuberger, supra,* this Court reversed the order of the trial court which had denied a motion for new trial, following the jury's verdict of $500 for plaintiff for car repairs. The *Gudat* Court found that the uncontradicted testimony by the plaintiff's treating physician that the accident had aggravated plaintiff's prior neck injuries, thus necessitating surgery, and testimony by the plaintiff and her passenger that the impact was such that the passenger was thrown into the plaintiff, who was thrown into the door, required the award of a new trial.

¶ 9 In each of the foregoing cases, *Neison v. Hines, supra; Mano v. Madden, supra;* and *Hawley v. Donahoo, supra,* the defense expert conceded that the plaintiff had sustained an objective injury, and in *Gudat v. Heuberger, supra,* the plaintiff's doctor's testimony of an aggravated prior neck injury which necessitated surgery was uncontested. However, in the instant case, although Dr. Heppenstall testified that MRI films did reveal degenerative cervical and lumbar disc disease, he maintained that this degenerative disease was not caused by the train accident. Furthermore, Dr. Heppenstall's testimony that appellant had complaints of "headaches, neck pain, and back pain," **was clearly based on the history given to him by appellant**, as he had earlier testified:

Q. [BY MR. LANDMAN] And generally, what was the history?

A. The patient complained of back injury from a train derailment, which occurred on his way to work when he was a conductor for Amtrak. The patient was a conductor on November the 16th, 1996, and boarded a train which went off the tracks into an embankment. The patient was jostled around in the train. He was initially seen in a hospital in New York where he was examined and released.

\* \* \* \*

The patient stated to me that he had persistent headaches, and these were frequent on a scale of zero to ten, is what I usually ask people about pain. Ten being like a knife. Zero being nothing.

\* \* \* \*

A. . . . Patient also complained of low back pain, but no evidence of any significant sciatica.

Q. What do you mean by that, no evidence of any significant sciatica?

A. I mean that he [had] no evidence of any pain down the back of his leg, which is typical of sciatica, which was typical of a ruptured disc.

With regard to his cervical spine, that's the neck, he complained of neck pain and pain down his right arm. . . .

\* \* \* \*

He stated to me that his back pain fluctuated in intensity. And he also experienced pain at night both in the cervical and in the lumbar areas.

¶ 10 In this case, where the medical expert presented by the defense merely recounted the subjective complaints of the plaintiff and opined that the asserted injuries were not a consequence of the occurrence, the jury was certainly free to find that the plaintiff did not sustain a compensable injury. Indeed, this Court has even held that a concession by the defense medical expert, that the plaintiff **may** have suffered a soft tissue injury, does not require the jury to award damages to the plaintiff:

Appellants initially argue that the concession, during cross-examination of the expert medical witness presented by appellee, that appellant Charles Henery may very well have suffered some soft

tissue injury, necessitates the award of at least nominal damages to appellant. We disagree. This Court, in *Holland v. Zelnick*, 329 Pa.Super. 469, 478 A.2d 885 (1984), rejected a similar claim, noting that:

> The issues as to whether [appellant] was really suffering any pain and whether any such pain was caused by [appellee's] conduct [were] for the jury. The jury was not required to award [appellant] any amount as it obviously believed that any injury [appellant] suffered in the accident was insignificant.

*Holland v. Zelnick, supra* at 475, 478 A.2d at 888. *Accord: Gigliotti v. Machuca*, 409 Pa.Super. 50, 58, 597 A.2d 655, 659 (1991).

> Evidence is not proof until it is believed and accepted by a trier of fact. Persons may indeed suffer pain that they attribute to a cause, but at law the cause they assert must be accepted as the cause of their pain. Their belief, however well founded in their minds, is not the cause until it finds acceptance in the minds of the fact triers.

*Boggavarapu v. Ponist*, 518 Pa. 162, 168, 542 A.2d 516, 519 (1988). Appellant Charles Henery testified that he suffered pain in his neck and back as a result of the accident. This testimony was supported by that of his family physician, Francis X. Brescia, D.O., who testified that he believed that the neck and back pain experienced by appellant was caused by the back injuries sustained in the motor vehicle accident, and it was for that difficulty that appellant had visited him, two or three times a week for 27 months, to receive physical therapy, ultrasound, and manipulation treatments. The board-certified orthopedic surgeon presented by appellee, Richard J. Boal, M.D., however, testified that appellant suffered from degenerative disc disease which existed prior to the accident and which had not been affected by the accident. Thus, there was a sure and certain evidentiary basis for the determination of the jury that the negligence of appellee was not a substantial factor in the injuries suffered by appellant. As a result, we may not disturb the verdict.

*Henery v. Shadle*, 443 Pa.Super. 331, 661 A.2d 439, 442 (1995), *appeal denied*, 542 Pa. 670, 668 A.2d 1133 (1995). *Accord: Summers v. Giant Food Stores, Inc.*, 743 A.2d 498, 507 (Pa.Super.1999)(*en banc*).

■ ¶ 11 Instantly, the portion of Dr. Heppenstall's opinion testimony relied upon by appellants merely echoed the statement of symptoms supplied by appellant, complaints which the jury could well have disbelieved, or determined to be insignificant. In the present case, although appellant testified that he was tossed about the train like a "pinball" and thrown against the ceiling, the defense disputed appellant's injury by offering evidence that appellant was aboard a train car which had not derailed. Moreover, the defense presented appellant's brother, William Bezerra, who testified that appellant had admitted to him that during the derailment appellant "suffered no injury, that he was using the same injury that he suffered in the car accident in 1984." Finally, the jury viewed a surveillance video of appellant, from which it could draw its own conclusions as to the sincerity and significance of appellant's complaints. In light of the evidence presented by appellee, the jury in the instant case could properly find that all of the injuries for which appellant sought to recover were preexisting. Accordingly, we find that the trial court properly denied the motion for a new trial.

■ ¶ 12 Appellants also claim that, since they "adduced unrebutted psychiatric testimony that Mr. Bezerra, as a direct consequence of the accident, had developed a chronic adjustment disorder, confirmed through objective testing, which, in all likelihood, rendered him unemployable," they are entitled to a new trial. We disagree. Appellants' argument is premised upon the

erroneous assumption that the jury was required to accept this testimony. This claim is without merit. "Even if testimony is uncontradicted, the jury is not required to accept everything or anything a party presents." *Dawson v. Fowler*, 384 Pa.Super. 329, 558 A.2d 565, 567 (1989), *appeal denied*, 523 Pa. 636, 565 A.2d 445 (1989). *See also: Brodhead v. Brentwood Ornamental Iron Co.*, 435 Pa. 7, 11, 255 A.2d 120, 122 (1969). In the instant case, the credibility of plaintiff's psychiatric expert, Dr. Michaels, was clearly put into issue by appellee's vigorous cross-examination of Dr. Michaels which revealed, *inter alia,* that (1) Dr. Michaels saw appellant upon referral by appellant's attorney, (2) Dr. Michaels diagnosed appellant with chronic adjustment disorder only eleven days after the accident, (3) Dr. Michaels was unaware of appellant's previous litigation from the 1984 car accident, (4) Dr. Michaels did not know how much time appellant[2] spent with his family before the accident, although he testified there had been some difficulties since the accident, (5) Dr. Michaels never received the emergency room treatment records of appellant, and (6) Dr. Michaels never noted in his records that appellant was now riding the train[3], an alleged goal of his treatment. As the jury was free to reject the testimony of Dr. Michaels, the claim that this testimony compelled an award of compensatory damages is meritless.

¶ 13 Appellants also argue that "the trial court's causation instruction erroneously engrafted common law standards of proximate causation onto the FELA (Federal Employers' Liability Act)." Under the FELA, "the test of a jury case is simply whether the proofs justify with reason the conclusion that employer negligence played any part, even the slightest, in producing the injury or death for which damages are sought."

2. Appellant had not been living with his family prior to the accident.

3. Appellant had claimed an inability to ride the train as a result of psychological trauma,

*Rogers v. Missouri Pacific R.R.*, 352 U.S. 500, 506, 77 S.Ct. 443, 1 L.Ed.2d 493 (1957). Thus, under the FELA, an employer is liable if the accident resulted "in whole or in part" from its negligence. *Id.* at 507, 77 S.Ct. 443. This standard differs from "proximate causation which makes a jury question dependent upon whether the jury may find that the defendant's negligence was the sole, efficient, producing cause of injury." *Rogers*, supra, 352 U.S. at 506, 77 S.Ct. 443. Instantly, appellant claims that "the court's causation instruction imposed a higher burden of proof on [appellant] than federal decisional law permits."

¶ 14 Specifically, appellants, in their brief, identify the following portions of the trial court's charge in support of their claim that the trial court committed reversible error:

The plaintiff alleges that by reason of his claimed injuries proximately resulting from the derailment, he has sustained damages. These allegations are not evidence, of course, but merely the extent of plaintiff's claim and must not be considered by you as evidence in this case.

\* \* \* \*

The defendant is liable for all the direct and proximate consequences that you find were caused by their alleged negligence.

\* \* \* \*

Damages should be awarded only if you find that the plaintiff's evidence provides sufficient data to assess them with reasonable certainty.

but evidence produced by appellee established that appellant was riding the rain with regularity to meet with attorneys and doctors.

\* \* \* \*

The fact that plaintiff has sustained injuries and damages and has brought the lawsuit does not give rise to any inference that the defendant caused the alleged injuries here.

\* \* \* \*

A plaintiff in a case like this cannot recover damages for an injury unless the injury claimed was legally caused by the conduct of the defendant.

¶ 15 In order to preserve alleged error in the charge for appellate review, a party must make a timely, specific objection at trial so that the trial court may, if it believes it appropriate, issue supplemental instructions. *See: Dilliplaine v. Lehigh Valley Trust Co.*, 457 Pa. 255, 258, 322 A.2d 114, 116 (1974). As our Pennsylvania Supreme Court has observed:

A specific objection must be made to preserve a claim of objectionable jury charge. *Tagnani v. Lew*, 493 Pa. 371, 426 A.2d 595 (1981). *See also* Pa.R.A.P. 302(b) (requiring that a specific exception to the language or omission complained of be made to the trial court to preserve an issue for appeal); and Pa. R.A.P. 2117(c) and 2119(e)(requiring that a party's brief expressly set forth in both the statement of the case and in the argument a reference to the place in the record where the issue presented for decision on appeal has been raised or preserved below). We note upon review that, at trial, appellees failed to lodge a specific objection to the jury charge with respect to the court's definition of appellees' burden of proof. Appellees have further failed to satisfy the requirements of Rules 2117(c) and 2119(e) in this regard. They therefore waive this issue.

*McNeil v. Owens–Corning Fiberglas Corp.*, 545 Pa. 209, 215–216, 680 A.2d 1145, 1149 (1996). *Accord: Takes v. Metropolitan Edison Company*, 548 Pa. 92, 695 A.2d 397 (1997). Similarly, this Court has noted that "[w]here a party fails to specifically object to a trial court's jury instruction, the objection is waived and cannot subsequently be raised on appeal." *Randt v. Abex Corp.*, 448 Pa.Super. 224, 671 A.2d 228, 232 (1996). Appellants, in their brief, rely on the following objection raised by counsel during the discussion on the proposed points for charge:

MR. BARISH [Attorney for appellant]: It's absolutely wrong, Your Honor. The defendant takes the plaintiff as he finds him, and there is another – and there is another aspect of defendant's charges that I think I would like to comment on, and that's only because this is an action under the Federal Employer Liability Act as distinguished from the common law, and **under the Federal Employer Act, the causation test** as between the injury and as between the tort and the damage is that the causation need not be by a preponderance of the evidence, but that the causation – **that the accident contributed to the injuries in whole or in part.**

Now, that's—that came into the FELA through a case called *Rogers v. Missouri Pacific Railroad*, 352 U.S. 500[, 77 S.Ct. 443, 1 L.Ed.2d 493], and has been applied to medical cases, specifically in *[Sentilles vs.] Inter–Caribbean Shipping Company*, 361 U.S. 107[, 80 S.Ct. 173, 4 L.Ed.2d 142] (1959). I am only pointing that out because in this one area, the law under the Federal Employer Liability Act differs from the law of Pennsylvania. (emphasis supplied)

¶ 16 It merits emphasis, and appellants concede, that the trial court did charge the jury using the "in whole or in part" language. Appellants now argue that "[t]his reference, therefore, in no way cured the court's erroneous submission of its proximate cause charge to the jury." However, this argument has been waived as no specific objection to the proximate cause instruction was ever raised at trial, and the citation to the record relied upon by appellants does not satisfy this require-

ment as it deals only with the causation phrase "in whole or in part." At the conclusion of the trial court's instructions, the trial court asked, "Is there anything that I may have omitted before I go into my closing charge?" Appellants' counsel objected to several portions of the charge, but did not challenge the causation instruction. Accordingly, this issue is waived.

¶ 17 Even had the issue been properly preserved by a specific objection, appellants would not be entitled to relief. The charge of the court included the following instructions:

> [T]he burden is on the plaintiff to establish by a preponderance of the evidence in this case that the derailment **caused or contributed to some injury** and consequently damages sustained by the plaintiff. (emphasis added)

\* \* \* \*

> The sole issue for you to decide in this case is whether the plaintiff **suffered any injuries** as a result of the train derailment and the extent of his injuries. (emphasis added)

\* \* \* \*

> The [FELA] provides in substance that every railroad engaged in interstate commerce shall be liable in damages for injuries to its employees resulting **in whole or in part** from the negligence of any of its officers or employees or from any defect or deficiency due to its negligence in the work area. (emphasis added)

¶ 18 "In examining an alleged erroneous instruction to the jury, it is necessary to view the charge as a whole." *Ely v. Reading Co.*, 424 F.2d 758, 760 (3 rd Cir.1970). When the charge is so examined, it is apparent that there is no basis upon which to disturb the verdict of the court. The instruction of the trial court made clear to the jury that appellee could be held liable if it contributed to or played any part in causing any injuries to Mr.

Bezerra. As the court's instruction made clear that appellant was not required to show that appellee's negligence was the sole cause of his injuries, the *Rodgers* standard was satisfied. *See: Ely v. Reading Co., supra,* 424 F.2d at 761–762 (holding no reversible error occurred where trial court's charge used the phrase "in whole or in part" and the phrase "proximate cause," since "proximate cause" was not defined as the sole cause but only as a causal relationship). Accordingly, this claim of error, while waived, is meritless.

¶ 19 Having considered the arguments of appellants, and having found no basis to award a new trial, we affirm the judgment entered on the verdict.

¶ 20 Judgment affirmed.