**Rasieleski v. Connor**

C.P. of Lackawanna County, no. 98-CV-4139.

*Gerald J. Hanchulak,* for plaintiff.
*Benjamin A. Nicolosi,* for defendant.

NEALON, *J.,* April 24, 2002—Plaintiff's post-trial motion in this case raises the recurring issue of when a jury in a personal injury action may properly decline to award noneconomic damages to a plaintiff who has established the causal negligence of a defendant. Since the defense medical expert opined at trial that plaintiff's alleged injury was not related to the tortious incident in question, the jury was free to accept the defense medical evidence as credible and to conclude that defendant's negligence did not cause compensable pain. Therefore, there was a reasonable evidentiary basis for the jury's decision to award no damages for noneconomic harm and the plaintiff's motion for a new trial on damages will be denied.

## I. FACTUAL BACKGROUND

Plaintiff Mark Rasieleski commenced this civil action against defendant James A. Connor Jr. based upon a slip and fall incident which allegedly occurred on November 26, 1997, on property that was owned by Connor. During trial, Rasieleski presented the testimony of his treating physician, J. Robert Gavin Jr. M.D., in support of his claim that he had injured his right elbow in the fall. Dr. Gavin testified that he first treated Rasieleski on January 28, 1998, some two months after the alleged fall, at

which time he diagnosed "some loose bodies of his olecranon and . . . some medial and lateral epicondylitis, which means a tendonitis of the elbow." (See deposition testimony of J. Robert Gavin Jr. M.D. dated 4/16/01, pp. 7, 9.) On February 13, 1998, and April 17, 1998, Dr. Gavin surgically removed Rasieleski's olecranon bursa and the loose bodies from his right elbow, and on July 16, 1998, Rasieleski was discharged on a "PRN" basis. (*Id.,* pp. 9-13, 17-18, 27-28.) Dr. Gavin opined that Rasieleski's right elbow injury and his consequent treatment and medical bills were causally related to the fall on November 26, 1997, (*id.,* pp. 19-21), although he later acknowledged on cross-examination that Rasieleski's right elbow condition could have been related to repetitive use of his right elbow during his employment as a mason. (*Id.,* pp. 25-27.)

The defense countered Dr. Gavin's opinions by offering the deposition testimony of Mark W. Scinico M.D., who had examined Rasieleski on August 6, 1999, pursuant to Pa.R.C.P. 4010. Based upon the conflicting history that Rasieleski had provided to his attending physicians regarding the etiology and onset of his right elbow pain, Dr. Scinico's review of Rasieleski's medical records and the results of his physical examination, Dr. Scinico opined that Rasieleski's olecranon bursitis and loose bodies were not causally related to the fall. (See deposition testimony of Mark W. Scinico M.D. dated 3/26/01, pp. 28-31.) Dr. Scinico indicated that if the damage to the olecranon had been caused by direct trauma to the tip of the elbow as claimed by Rasieleski, "there should have been a significant clinical finding there" such as a "black and blue mark, swelling, bleeding, cuts, contu-

sion [or] something that would [have] prevent[ed] him from moving the arm" when he first presented to the emergency room. (*Id.,* p. 30.) Dr. Scinico reasoned that since "[t]here was no tenderness over the tip of the elbow and there was normal range of motion" during the initial emergency room visit, the olecranon bursitis was not caused by the fall. (*Id.,* pp. 30-31.) Dr. Scinico also concluded that as of the date of his examination on August 6, 1999, Rasieleski did not require any further treatment nor did he have any physical restrictions imposed upon him. (*Id.,* pp. 31-32.)

The jury found both parties causally negligent and in accordance with the Comparative Negligence Act, apportioned 70 percent responsibility to Connor and 30 percent comparative fault to Rasieleski. The jury compensated Rasieleski $10,726.20 for his medical expenses, but failed to award any damages for past and future pain and suffering, mental anguish, discomfort, inconvenience, embarrassment, humiliation, distress, disfigurement and loss of the ability to enjoy the pleasures of life. The jury verdict was thereafter molded to $7,508.34 to reflect Rasieleski's comparative negligence of 30 percent.

Rasieleski filed a timely "motion for post-trial relief on the issue of damages only pursuant to Pa.R.C.P. 227.1" in which he argued that the jury's failure to award non-economic damages "bears no reasonable relationship to the loss suffered by [Rasieleski]" and "is so inadequate that it should not be permitted to stand." (See plaintiff's motion for post-trial relief, ¶¶13-14.) Connor opposes the request for post-trial relief and asserts in the alternative that in the event that Rasieleski's post-trial motion

is granted, a new trial should be awarded on liability as well since "the issues of negligence and damages are so intertwined in this case that they cannot be fairly separated." (See defendant's answer to plaintiff's motion, p. 3.) Following the completion of oral argument on March 4, 2002, this matter became ripe for disposition.

## II. DISCUSSION

### (A) *Standard of Review*

A new trial should be granted only when the jury's verdict is so contrary to the evidence that it shocks one's sense of justice. *Davis v. Mullen,* 565 Pa. 386, 390, 773 A.2d 764, 766 (2001); *Fanning v. Davne,* 795 A.2d 388, 393 (Pa. Super. 2002). A new trial is not warranted due to a mere conflict in the testimony, *Mano v. Madden,* 738 A.2d 493, 495-96 (Pa. Super. 1999) (en banc), or because the trial judge, on the same facts, would have arrived at a different conclusion. *Fischer v. Troiano,* 768 A.2d 1126, 1129 (Pa. Super. 2001). Rather, a jury verdict may be set aside on the grounds of inadequacy only where "the injustice of the verdict [stands] forth like a beacon." *Davis, supra* at 391, 773 A.2d at 766; *Fischer, supra.*

A jury is free to believe all, part or none of the evidence presented and may selectively accept as credible any part of a witness's testimony and disregard the remaining portions. *Summers v. Giant Food Stores Inc.,* 743 A.2d 498, 507 (Pa. Super. 1999); *Fischer v. Troiano,* 44 D.&C.4th 372, 377 (Lacka. Cty. 2000), *aff'd,* 768 A.2d 1126 (Pa. Super. 2001). Thus, "[e]ven if testimony

is uncontradicted, the jury is not required to accept everything or anything a party presents." *Bezerra v. National R.R. Passenger Corp.,* 760 A.2d 56, 63 (Pa. Super. 2000). Nevertheless, this rule is tempered by the requirement that the verdict must bear some reasonable relation to the loss suffered by the plaintiff as demonstrated by the uncontroverted evidence presented at trial. *Neison v. Hines,* 539 Pa. 516, 520, 653 A.2d 634, 637 (1995); *Fischer,* 44 D.&C.4th at 377. "The synthesis of these conflicting rules is that a jury is entitled to reject any and all evidence up until the point at which the verdict is so disproportionate to the uncontested evidence as to defy common sense and logic." *Neison, supra* at 521, 653 A.2d at 637; *Hobbs v. Ryce,* 769 A.2d 469, 474-75 (Pa. Super. 2001).

### (B) *Reasonable Relationship Between Jury Verdict and Trial Evidence*

The question of when a jury may properly decline to award any damages for noneconomic harm depends, in part, upon whether the defense has conceded the existence of an accident-related injury that has caused compensable pain and suffering. Although that decision is largely a fact specific determination based upon the evidence introduced at trial, the Pennsylvania courts have reached varying conclusions as to what constitutes a compensable injury. Many of those arguably conflicting holdings appear to have as their genesis the Supreme Court decision in *Boggavarapu v. Ponist,* 518 Pa. 162, 542 A.2d 516 (1988).

In *Boggavarapu,* a plaintiff who had been bitten by a dog brought a personal injury action against the dog

owner who, in turn, joined the hospital where the plaintiff had received two tetanus shots. The basis for the claim against the hospital was the plaintiff's complaint that the tetanus needle had pierced his sciatic nerve. After the jury returned a verdict finding only the dog owner liable and awarding the plaintiff the cost of his emergency room treatment, while declining to award any damages for pain and suffering, the trial judge ordered a new trial on the issue of damages and the Superior Court affirmed the grant of a new trial. In reversing the lower court, the Supreme Court remarked:

"We have held and hold now that there are injuries to which human experience teaches there is accompanying pain. . . . Those injuries are obvious in the most ordinary sense: the broken bone, the stretched muscle, twist of the skeletal system, injury to a nerve, organ or their function, and all the consequences of any injury traceable by medical science and common experience as sources of pain and suffering. . . . Pain, of varying degree, may indeed follow small injury and be greater in its consequence than the initial blow. It may aggravate existing defects of the person, exploding latent diseases or precipitate, into present pain, what otherwise might have passed or been long delayed, absent the immediate injury. . . . Pain may be subjective, and if believed, is compensable. . . . If the pain, however, has no known medical source and is subjective to the person, the triers of fact must believe and accept that it could and in fact exists. They are not to be faulted, however, if they do not believe all they are told and all that their common experience does not accept. That is not to say, they may disregard obvious injury. It is, however, to say that they are not obliged to

believe that every injury causes pain or the pain alleged." *Boggavarapu, supra* at 167, 542 A.2d at 518. (citations omitted)

Noting that the plaintiff "did not complain that the dog bite itself caused his injury" and instead alleged that "[a]ll his complaints were the product of the tetanus needle which he complained pierced his sciatic nerve," the *Boggavarapu* court reasoned that the jury was at liberty to conclude that the plaintiff's dog bite was "a transient rub of life and living, a momentary stab of fear and pain, or neither." *Id.* at 167-68, 542 A.2d at 518. Since the jurors exculpated the hospital from liability and "found a tort in the dog bite, but found no pain because the pain alleged was the needle and not the dog," the court held that the jury was entitled to award no damages for pain and suffering. *Id.* at 168, 542 A.2d at 519.

The Supreme Court later tailored its ruling in *Boggavarapu* to apply in cases where the defense acknowledges the presence of an accident-related injury and merely challenges the severity and permanency of the injury. In *Neison, supra,* the jury returned a zero verdict even though the defense medical witness testified that the plaintiff had suffered a neck sprain and shoulder blade sprain which would have taken three to five months to resolve. The trial judge granted a new trial on damages, but the Superior Court reversed the lower court and the Supreme Court thereafter "granted allocatur to determine if the Superior Court's decision was in conflict with our decision in *Boggavarapu v. Ponist,* 518 Pa. 162, 542 A.2d 516 (1988)." *Neison, supra* at 519-20, 653 A.2d at 636. In affirming the lower court's grant of a new trial, the *Neison* court observed that "the medical testimony of

both parties established that Ms. Neison suffered from objective injuries, the defense expert only disagreeing as to their extent." *Id.* at 524, 653 A.2d at 639. Hence, the court concluded that "[w]here even the medical expert produced by the defense conceded the injury, the jury's disbelief was unwarranted" and the jury was required to award some damages for noneconomic harm. *Id.* at 527, 653 A.2d at 640. Compare *Catalano v. Bujak,* 537 Pa. 155, 161, 642 A.2d 448, 451 (1994) (if the defense does not admit the existence of an injury, the jury is free to disbelieve the plaintiff's evidence on damages and thereby refuse to award damages for pain and suffering).

Based upon *Neison* and *Boggavarapu,* the Superior Court has consistently held that if the defense affirmatively introduces expert medical testimony conceding the existence of an injury which is attributable to the tort at issue, the jury must award some damages for noneconomic harm in order for the verdict to be reasonably related to the uncontested evidence presented at trial. See *e.g., Fischer,* 768 A.2d at 1130-31 (new trial on damages warranted where jury awarded damages for medical expenses, but not for pain and suffering, even though both parties' medical experts agreed that plaintiff had suffered a compression fracture of the thoracic vertebrae); *Burnhauser v. Bumberger,* 745 A.2d 1256, 1261 (Pa. Super. 2000) (since the defense medical expert testified that plaintiff suffered a soft tissue injury which should have resolved within six months of the accident, "the jury was required at least to compensate [plaintiff] for all damages related to her injuries that resulted from [defendant's] negligence during that six-month period.");

*Mano,* 738 A.2d at 497 ("It is impermissible for a jury, in a personal injury case, to disregard the uncontroverted testimony from the experts for both parties that the plaintiff suffered some injury as a result of the accident in question."). Furthermore, even if the defense does not present expert testimony acknowledging an injury related to the accident, a jury must nonetheless award damages if defense counsel admits "the existence and cause of [plaintiff's] injury in his closing argument." *Kruczkowska v. Winter,* 764 A.2d 627, 630 (Pa. Super. 2000). Conversely, if the defense disputes the existence of an injury or argues via a medical expert that the plaintiff's injury predated the accident or is otherwise unrelated to the defendant's tortious conduct, the jury may properly refuse to award damages for noneconomic loss. See *e.g., Bezerra,* 760 A.2d at 61 ("where the medical expert presented by the defense merely recounted the subjective complaints of the plaintiff and opined that the asserted injuries were not a consequence of the occurrence, the jury was certainly free to find that the plaintiff did not sustain a compensable injury."); *Summers,* 743 A.2d at 507 (jury could refuse to award damages since the defendants contested the nature and cause of the plaintiff's injuries); *Livelsberger v. Kreider,* 743 A.2d 494, 495-97 (Pa. Super. 1999) (zero verdict upheld on the grounds that defendant presented expert testimony indicating that plaintiff's symptoms predated the accident).

The relatively bright line of distinction recognized by the foregoing case law was obfuscated somewhat by a series of subsequent rulings which granted new trials after juries had declined to award noneconomic damages in cases in which the defense introduced no medical testi-

mony at trial. See *Monschein v. Phifer,* 771 A.2d 18 (Pa. Super. 2001); *Hobbs,* 769 A.2d at 474. Any ambiguity in this respect was promptly clarified by the Supreme Court holding in *Davis, supra.* In that case, the defense did not present a medical witness and instead relied upon the testimony of the plaintiff's treating physician who "could not say for certain if the spinal injury was related to the accident or from another cause, including any one of the three prior automobile accidents that [plaintiff] admitted to being involved in." *Davis, supra* at 389, 773 A.2d at 765-66. After the jury awarded the plaintiff compensation for his medical expenses only, the trial court denied a motion for a new trial on damages. In attempting to reconcile the "seemingly inconsistent holdings" in cases where juries had declined to award noneconomic damages, the *Davis* court expressly abrogated *Dougherty v. McLaughlin,* 432 Pa. Super. 129, 637 A.2d 1017 (1994) and remarked:

"Today, we hold that a jury's award of medical expenses without compensation for pain and suffering should not be disturbed where the trial court had a reasonable basis to believe that: (1) the jury did not believe the plaintiff suffered any pain and suffering, or (2) that a preexisting condition or injury was the sole cause of the alleged pain and suffering." *Davis, supra* at 391, 773 A.2d at 767.

Since the plaintiff's treating physician "admitted that he could not say for certain if the spinal injury was related to the accident or whether it was caused by some other event," the court determined that "there was a reasonable basis for the jury to believe: (1) that Davis did not suffer pain and/or (2) that his alleged injury was not

caused by the negligence of the defendant." *Id.* at 397, 773 A.2d at 770.[1]

More recently, in *Majczyk v. Oesch,* 789 A.2d 717 (Pa. Super. 2001), an en banc panel of the Superior Court analyzed the propriety of zero verdicts in the post-*Davis* era. In *Majczyk,* the only medical evidence offered by the defense was the testimony of the plaintiff's former treating physician who diagnosed a cervical strain injury eight days after the accident, but further confirmed "that when he examined [plaintiff] three weeks after the accident, she reported that she was 100 percent better." *Id.* at 721. Based upon its assessment of earlier appellate precedent on the issue, the *Majczyk* court concluded that "[t]he synthesis of these opinions is that where a defendant concedes liability and his or her expert concedes injury resulting from the accident that would reasonably be expected to cause *compensable* pain and suffering, the jury's verdict is against the weight of the evidence where it finds for the defendant." *Id.* at 722. (emphasis in original) Reasoning that a jury may conclude that an insignificant injury does not necessarily result in compensable pain and suffering, the Superior Court stated:

"Thus, while the jury may have concluded that [plaintiff] suffered some painful inconvenience for a few days or weeks after the accident, it may also have concluded that [plaintiff's] discomfort was the sort of transient rub of life for which compensation is not warranted. *Bogga-*

---

1. Following its pronouncement in *Davis,* the Supreme Court vacated a series of Superior Court rulings and remanded those appeals for reconsideration in light of the standard articulated in *Davis.* See *e.g., McDermott v. Consolidated Rail Corp.,* 567 Pa. 561, 789 A.2d 203 (2001); *Closky v. US Airways Inc.,* 567 Pa. 70, 785 A.2d 491 (2001).

*varapu, supra* at 167, 542 A.2d at 518. By our decision today, we are not suggesting that a jury cannot award pain and suffering damages for minor injuries. Rather, we hold that the determination of what is a compensable injury is uniquely within the purview of the jury. *Davis, supra.* As a result, we find no abuse of discretion in the trial court's refusal to grant a new trial based on the testimony set forth *supra.*" *Id.* at 726.

In the case at bar, it would appear illogical for the jury to award medical expenses to Rasieleski by finding that the surgical treatment for his elbow injury was related to the fall while simultaneously concluding that he was not entitled to recover noneconomic damages for that injury. However, unlike the defendants in *Neison* and its progeny, Connor did not admit that Rasieleski sustained an elbow injury in the fall which caused compensable pain. On the contrary, the defense introduced expert medical testimony which suggested that Rasieleski's elbow condition was not related to his fall. As the ultimate finder of fact, the jury was free to accept the defense expert's opinion, and to reject the treating physician's contrary conclusion, regarding the etiology of Rasieleski's elbow condition. See *Holland v. Zelnick,* 329 Pa. Super. 469, 474, 478 A.2d 885, 887 (1984). In light of the conflicting evidence which was presented at trial with respect to the cause and nature of Rasieleski's elbow injury, there was a reasonable basis for the jury to reimburse Rasieleski for his medical bills but deny him compensation for pain and suffering. See *Davis, supra; Catalano, supra; Bezerra, supra.* Consequently, since there is evidentiary support in the record for the jury's refusal to award non-

economic damages in this case, Rasieleski's motion for a new trial on damages will be denied.

### ORDER

And now, April 24, 2002, upon consideration of the plaintiff's "motion for post-trial relief on the issue of damages only pursuant to Pa.R.C.P. 227.1," the memoranda of law submitted by the parties and the oral argument of counsel on March 4, 2002, and based upon the reasoning set forth in the foregoing memorandum, it is hereby ordered and decreed that:

(1) Plaintiff's motion for post-trial relief on the issue of damages only pursuant to Pa.R.C.P. 227.1 is denied; and

(2) The clerk of judicial records is directed to enter judgment in favor of the plaintiff and against the defendant in the amount of $7,508.34, not including taxable costs pursuant to Lacka. Co. R.C.P. 275 and post-verdict interest under 42 Pa.C.S. §8101.